THE STATE OF OHIO, APPELLEE, *v.* WOODS, APPELLANT.

(No. C-870120—Decided April 27, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *L. Susan Laker* and *Claude N. Crowe,* for appellee.

*Peter Rosenwald,* for appellant.

DOAN, J. In August 1986, the Hamilton County Grand Jury returned

a joint, multi-count indictment charging Carol Jean Porter and defendant-appellant Jeffrey Woods with aggravated murder, aggravated robbery and conspiracy to commit aggravated murder and/or aggravated robbery in connection with the fatal shooting of Porter's uncle, Jessie Gandy. The charges against defendant were tried to a jury.[1] At the close of the state's case-in-chief, the trial court granted defendant's Crim. R. 29 motion for acquittal on the conspiracy charge. The defense rested without presenting any evidence and the remaining charges were submitted to the jury. The jury subsequently found defendant guilty of aggravated murder and aggravated robbery, and the trial court sentenced defendant as appears of record and entered judgment accordingly. From that judgment, defendant has taken the instant appeal in which he advances four assignments of error.

I

Defendant, in this first assignment of error, contends that the trial court erred in permitting the grand jury testimony of the key prosecution witness to be read to the jury. We find this contention to be well-taken.

A brief factual statement is necessary to establish the context of the trial court's action. The record of the proceedings below reveals that, on January 20, 1981, at approximately 12:00 p.m., Gandy's son returned home to find the house in disarray and his father prone on the kitchen floor. The police were summoned, and their investigation disclosed that Gandy had been shot six times with a .38 caliber weapon and that the only item of value missing from the house was Gandy's wallet. On January 22, defendant and

Porter were questioned by the police as to their whereabouts on the day of the murder. They denied knowledge of or participation in the murder, asserting that they had spent the day together at the movies. Neither the murder weapon nor the wallet was recovered, and the investigation was subsequently closed.

In July 1986, the authorities resumed their investigation into Gandy's murder when William Meister, who had been incarcerated in the Hamilton County Justice Center with defendant, contacted a police detective to verify defendant's account of his part in an unsolved murder which took place in January 1981. On August 1, 1986, defendant was again questioned by the police, and in a recorded interview, with counsel present, he recounted his version of the events of January 20, 1981. Defendant stated that Porter had planned a trip to Florida and that, on the morning of January 20, she displayed to him a .38 caliber handgun that she planned to take on her trip for protection. When Porter suggested using the gun to kill Gandy for his perceived role in her mother's death, defendant objected. Later that morning, with the belief that he had convinced Porter to abandon her plot to avenge her mother's death, defendant accompanied Porter to Gandy's home, where she had in the past received her Social Security checks.

When defendant and Porter arrived at Gandy's home, Gandy admitted them. Porter proceeded to the kitchen, and Gandy subsequently followed her, leaving defendant in the living room. As defendant stood at the front door and informed Porter that he was going out for coffee, he heard three gunshots. He immediately fled from the house and ran up the street. Porter soon overtook him and handed him a black wallet. Defendant im-

---

[1] The record before us does not reflect the disposition of the charges against Porter.

mediately returned the wallet to Porter without viewing its contents and never saw it again. Defendant and Porter proceeded together to downtown Cincinnati, where Porter purchased a new jacket. The pair then proceeded to a movie theater, tossing the gun into an abandoned building on the way. Two weeks later, defendant, at Porter's request, returned to the abandoned building and retrieved the gun. Porter cleaned the gun, dipped it into a bucket of paint, wrapped and bagged the gun, weighted the bag, and threw it into the Ohio River.

Meister testified before the grand jury that, in late June 1986, while he and defendant were incarcerated, defendant confessed to accompanying Porter to the victim's home and to shooting the victim with a handgun. At defendant's trial, however, when called by the state to render the only testimony implicating defendant in the crimes, Meister refused to testify on the grounds that the state had reneged on its promise to protect him while in jail and that he was uncertain as to whether his present recollection accurately reflected the particulars of defendant's confession or had been influenced by what the police had related to him after his grand jury testimony. The trial court, over defendant's objection, permitted the court reporter who transcribed Meister's grant jury testimony to read the testimony into evidence.

A

The Ohio Rules of Evidence provide several means by which the substance of prior testimony or a prior written statement may be elicited or introduced into evidence at trial. Meister's grand jury testimony was admitted into evidence under Evid. R. 803(5), which provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

The recorded-recollection exception to the hearsay rule set forth under Evid. R. 803(5) accords with the pre-Rules, common-law standard governing the admission of "past recollection recorded" established by the Supreme Court of Ohio in *State* v. *Scott* (1972), 31 Ohio St. 2d 1, 60 O.O. 2d 1, 285 N.E. 2d 344. The court in *Scott* recognized a "past recollection recorded" exception to the common-law proscription against the admission of hearsay evidence when a witness has testified that his present recollection is absent or incomplete, but that his recollection was complete at the time that the memorandum sought to be introduced was made and that his recollection was accurately recorded. *Id.* at 6, 60 O.O. 2d at 3-4, 285 N.E. 2d at 348. Thus, a party seeking admission of prior testimony or a prior written statement of a witness under the Evid. R. 803(5) hearsay exception must establish by the testimony of the witness: (1) that the witness had firsthand knowledge of the matter; (2) that the witness made or adopted a memorandum or record concerning the matter "when the matter was fresh in his memory"; (3) that the memorandum or record reflects the witness's "knowledge correctly"; and (4) that the witness has

4

"insufficient recollection to enable him to testify fully and correctly." Evid. R. 803(5); see, also, *Scott, op. cit.*; Giannelli, Ohio Evidence Manual (1982), Section 803.09. If the above criteria are met, the memorandum or record may be read into evidence, but it may not be received as an exhibit unless offered by an adverse party. Evid. R. 803(5).

When the state sought to introduce Meister's grand jury testimony under Evid. R. 803(5), defendant objected, asserting that the admission of Meister's grand jury testimony over his standing refusal to testify at trial to the matters recounted to the grand jury would constitute a deprivation of defendant's Sixth Amendment right of confrontation. Defense counsel thereupon conducted a voir dire examination in which Meister declared that he would not answer any questions on cross-examination. After the trial court permitted the testimony to be read into the record, defense counsel was given the opportunity to cross-examine Meister. On cross-examination, Meister refused to verify the truth of his grand jury testimony or to respond to questions regarding the substance of the testimony, and ultimately declined to respond further.

Exceptions to the hearsay rule are premised upon necessity and circumstantial guarantees of trustworthiness surrounding the declaration which tend to assure the truthfulness of the hearsay testimony. The Evid. R. 803 (5) recorded-recollection exception gathers its circumstantial guarantee of trustworthiness from the presence of the declarant on the witness stand, subject to oath, cross-examination and demeanor evaluation. Staff Note to Evid. R. 803. The court in *Scott, supra,* citing the decision of the United States Supreme Court in *California* v. *Green* (1970), 399 U.S. 149, held that the "past recollection recorded" exception

to the hearsay rule does not deprive an accused of his constitutional right of confrontation provided that the declarant, as contemplated under Evid. R. 803(5), " 'is testifying as a witness and [is] subject to full and effective cross-examination.' " *Scott, supra,* at 9, 60 O.O. 2d at 5, 285 N.E. 2d at 349 (quoting *Green, supra,* at 158).

We find that, in light of Meister's declaration on voir dire that he would not respond to questions posed with respect to his grand jury testimony and his reiteration of that position on cross-examination, the admission of the testimony under Evid. R. 803(5) constituted a violation of defendant's constitutional right of confrontation. We, therefore, conclude that Meister's grand jury testimony was inadmissible under Evid. R. 803(5).

An accused's constitutional right of confrontation is expressly preserved in the alternative methods by which the substance of prior testimony or a prior written statement may be elicited or introduced into evidence at trial. Evid. R. 612 permits the use of a writing to refresh a witness's present recollection, providing in relevant part as follows:

" * * * if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, * * * an adverse party is entitled * * * to inspect [the writing], to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. * * *"

In the "present recollection refreshed" situation contemplated under Evid. R. 612, the witness looks at the writing to refresh his memory, but then proceeds to testify upon the basis of his present independent knowledge. *Scott, supra,* at 5-6, 60 O.O. 2d at 3, 285 N.E. 2d at 347-348. The recollection of the witness may be refreshed by directing his attention to a former statement, the former state-

ment may even be repeated to the witness, and the witness may be called upon to correct his testimony or to explain any apparent inconsistencies between his present testimony and his former statement. *State* v. *Diehl* (1981), 67 Ohio St. 2d 389, 391-392, 21 O.O. 3d 244, 246-247, 423 N.E. 2d 1112, 1114-1115 (quoting *Hurley* v. *State* [1888], 46 Ohio St. 320, 323, 21 N.E. 645, 646-647).

Under Evid. R. 803(5), recorded recollection, the writing itself, whether read into the record or introduced into evidence by an adverse party, constitutes substantive evidence. In contrast, when a party seeks to refresh a witness's recollection under Evid. R. 612, the evidence consists solely of the witness's present testimony. See *Diehl, supra,* at 395, 21 O.O. 3d at 248-249, 423 N.E. 2d at 1116. The rules are similar, however, in that both contemplate the presence of the witness on the stand, subject to cross-examination. Meister declined to respond to questions posed with respect to his grand jury testimony on direct examination and declared that he would not answer questions on cross-examination. To permit the state to employ the procedures established under Evid. R. 612 to introduce the substance of Meister's grand jury testimony under the guise of refreshing his recollection would contravene both the letter and spirit of the rule. We, therefore, conclude that Meister's grand jury testimony could not be elicited under Evid. R. 612.

Finally, the former testimony of a declarant may be introduced into evidence at trial under Evid. R. 804 if the declarant or his present testimony is "unavailable." A declarant is "unavailable" if, *inter alia,* he "persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so * * *." Evid. R. 804(A)(2). Pursuant to Evid. R. 804(B)(1), "[t]estimony given as a witness at another hearing of the same or a different proceeding" is not excluded under the hearsay rule if the declarant is "unavailable" as a witness, as defined under Evid. R. 804(A), and "if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Evid. R. 804(B)(1).

Meister's standing refusal to testify to the subject matter of his grand jury testimony qualifies him as an "unavailable" witness. The circumstantial guarantee of trustworthiness inherent in the Evid. R. 804(B)(1) exception to the hearsay rule is the prior opportunity of the party against whom the former testimony is now offered "to develop the testimony by direct, cross, or redirect examination." Staff Notes to Evid. R. 804. We may infer from the nature of grand jury proceedings that defendant was not present when Meister testified before the grand jury and that he was not given the opportunity there, either personally or through counsel, to cross-examine Meister. We, therefore, conclude that Meister's grand jury testimony was inadmissible under Evid. R. 804(B)(1).

Having thus found no avenue by which Meister's grand jury testimony might properly be elicited or introduced into evidence at trial, we find that the trial court erred in admitting the testimony.

### B

When an appellant has alleged and demonstrated error in the trial court's admission of evidence, the reviewing court must determine if the error was prejudicial or harmless. See Crim. R. 33(E)(3). In so determining, the court must review the entire record, disregarding the objectionable material, and determine whether there was otherwise overwhelming evidence of

the appellant's guilt. *State* v. *Davis* (1975), 44 Ohio App. 2d 335, 343-344, 73 O.O. 2d 395, 399, 338 N.E. 2d 793, 800 (citing *Harrington* v. *California* [1969], 395 U.S. 250). If the error alleged and demonstrated is constitutional in nature and the reviewing court, in disregarding the objectionable material, cannot say that the record otherwise contains overwhelming evidence of the appellant's guilt, the judgment of the trial court must be reversed. *Davis, supra,* at 344, 73 O.O. 2d at 400, 338 N.E. 2d at 801.

We determined *supra* that the admission of Meister's grand jury testimony constituted a violation of defendant's Sixth Amendment right of confrontation. Upon careful review of the instant record, excluding Meister's grand jury testimony, we cannot say that the record before us otherwise demonstrates overwhelming evidence of defendant's guilt of the offenses charged. We, therefore, conclude that the trial court's admission of the objectionable testimony was prejudicial to defendant and, accordingly, sustain the first assignment of error.

## II

Defendant, in his second assignment of error, contends that the trial court erred in refusing to instruct the jury on the limited use of Meister's grand jury testimony. The need for a limiting instruction is obviated by our determination *supra* that the testimony was inadmissible. Resultantly, this contention is subsumed in our disposition of the first assignment of error.

## III

In his third assignment of error, defendant contends that the evidence was insufficient to support a jury charge on the offense of complicity. We agree.

R.C. 2923.03, which proscribes complicity, provides in relevant portion:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

"(4) Cause an innocent or irresponsible person to commit the offense.

"* * *

"(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. * * *"

To establish that an accused acted as an accomplice to a crime, the prosecution must demonstrate that the accused incited, assisted or encouraged the criminal act. *State* v. *Hines* (July 16, 1980), Hamilton App. No. 790558, unreported. The mere presence of the accused during the commission of a crime does not make him an accomplice. *Id.; State* v. *Johnson* (1983), 10 Ohio App. 3d 14, 10 OBR 20, 460 N.E. 2d 625. Nor are the actions of an accused as an accessory after the fact proscribed under Ohio law. *State* v. *Starr* (1970), 24 Ohio App. 2d 56, 58, 53 O.O. 2d 167, 168, 263 N.E. 2d 572, 574.

As noted *supra,* defendant was acquitted on the indicted charge of conspiracy at the close of the state's case upon his Crim. R. 29 motion. The court below, at the instigation of the prosecution, instructed the jury on the offense of complicity upon its determination that the evidence adduced at trial demonstrated that defendant was either himself the principal offender or present when the offenses were committed.

Meister, in his grand jury testimony, implicated defendant as the

principal offender in the crimes. Defendant, in his recorded statement, asserted that he accompanied Porter to the Gandy home under the belief that Porter had abandoned her plan to avenge her mother's death, that when Porter shot Gandy, he fled, and that when she thereafter handed him what might or might not have been Gandy's wallet, he promptly returned it to her and never saw the wallet or its contents again. Defendant confessed only to assisting Porter after the murder in fabricating an alibi, by accompanying her to purchase a change of clothes and then to a movie, and in helping her to dispose of the murder weapon. Under Meister's version of the events in question, defendant could only be charged as a principal offender. Under defendant's version, he was merely present at the scene of the crimes and acted not as an accomplice, chargeable under R.C. 2923.03, but as an accessory after the fact. We, therefore, conclude that the evidence adduced at trial did not support an instruction on complicity and, accordingly, sustain the third assignment of error.

### IV

In his fourth and final assignment of error, defendant contends that the state adduced insufficient evidence to support his convictions and that the convictions were contrary to the manifest weight of the evidence. We agree.

We determined in response to defendant's first assignment of error that the admission of Meister's grand jury testimony constituted prejudicial error of constitutional magnitude. The challenge presented by defendant in his final remonstration to the legal sufficiency of the evidence to support his convictions presents the question of whether, in the absence of Meister's grand jury testimony, the evidence adduced below was such that reasonable minds could reach different conclu-

sions as to whether each and every element of the offenses charged was proven beyond a reasonable doubt. See *State* v. *Thomas* (1982), 70 Ohio St. 2d 79, 24 O.O. 3d 150, 434 N.E. 2d 1356; *Davis, supra,* at 343, 73 O.O. 2d at 399, 338 N.E. 2d at 800.

Upon careful review of the instant record, excluding Meister's grand jury testimony, we find that the only evidence of defendant's involvement in the murder and robbery of Gandy is his recorded statement in which he admits, in essence, to being an accessory after the fact. The record is devoid of evidence on the element of defendant's identity as the perpetrator of the charged offenses. We, therefore, reverse the judgment of the court below and order that defendant be discharged.

*Judgment accordingly.*

BLACK, P.J., and KLUSMEIER, J., concur.