The STATE Of Ohio, Appellant,

v.

JACKSON et al., Appellees.

[Cite as *State v. Jackson* (1993), 92 Ohio App.3d 467.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–910777 through C–910780.

Decided April 28, 1993.

468

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *William E. Breyer,* Assistant Prosecuting Attorney, for appellant.

*Judith L. Rauchman,* for appellee Nathaniel Jackson.

*Peter Rosenwald,* for appellee Ronald Webster.

*Raymond T. Faller,* for appellee Marvin Murrell.

*Thomas W. Miller* and *W. Kelly Johnson,* for appellee Tim Murrell.

*Per Curiam.*

Plaintiff-appellant, the state of Ohio, appeals the ruling of the court below suppressing the use of the out-of-court statements of James Foster at the retrial of defendants-appellees Nathaniel Jackson, Ronald Webster, Marvin Murrell and Tim Murrell on aggravated arson, kidnapping and felonious assault charges.

In granting the various motions to suppress, the trial court held that Foster's statements were inadmissible hearsay, not falling within the recognized exceptions for excited utterances or former testimony. Accordingly, the state brought these appeals alleging, in a single assignment of error, that the trial court incorrectly granted the motions to suppress Foster's statements. We disagree.

On October 30, 1990, the Hamilton County Grand Jury returned an indictment (case No. B-907228) alleging that the appellees abducted Foster, beat him, doused him with gasoline, set him afire, and abandoned him along a deserted strip of highway. A passing motorist extinguished the flames engulfing Foster and rushed him, appropriately enough, to the Good Samaritan Hospital in Cincinnati.

While hospitalized, Foster was twice interviewed by Cincinnati police officers. On both occasions, Foster described the attack in great detail and identified the

appellees as the perpetrators. The appellees were tried jointly before a jury in May 1991. Foster was the sixth prosecution witness to testify. He again identified the appellees as his attackers.

At the conclusion of Foster's direct examination, appellees moved for a mistrial. The prosecution had incorrectly identified the date of the offense in the indictment and the bill of particulars: a defect that seriously compromised the appellees' alibi defenses. The trial court granted a mistrial. Foster was never subjected to cross-examination.

On July 6, 1991, four days before the start of the retrial, James Foster was shot to death. Appellant, therefore, sought a pretrial ruling on the admissibility of Foster's former trial testimony and of his purported excited utterances made in the hospital. The record of the September 24, 1991 suppression hearing discloses that two police officers, two doctors, and a nurse testified as to the conversations they had with Foster on October 10 and 12, 1990. Following submission of briefs, the trial court issued and subsequently journalized an opinion suppressing the use of Foster's statements at trial.

■ As an initial matter, we note that the various motions ruled upon by the trial court were captioned as motions *in limine*, or motions for a pretrial ruling, the disposition of which is interlocutory and does not ordinarily give rise to immediate appellate review. In its October 21, 1991 opinion, however, the trial court characterized the motions as motions to suppress evidence. In *State v. Davidson* (1985), 17 Ohio St.3d 132, 17 OBR 277, 477 N.E.2d 1141, syllabus, the Ohio Supreme Court determined that:

"[Any] motion, however labeled, which, if granted, restricts the state in the presentation of certain evidence and, thereby, renders the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed, is, in effect, a motion to suppress."

The pretrial challenges to Foster's statements, as they were sustained, seriously weakened the state's case. Therefore, the trial court was correct in recasting the motions. The state is permitted to appeal the suppression order pursuant to R.C. 2945.67 and Crim.R. 12(J).

■ Our analysis of the admissibility of Foster's statements made from a hospital bed to Officer Zieverink on October 10, and to Officers Lawson and Frisby on October 12, turns upon whether the trial court properly applied Evid.R. 803(2), which reads as follows:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

The Supreme Court of Ohio has held that an out-of-court statement which would otherwise constitute inadmissible hearsay may be admissible as an excited utterance if the trial judge reasonably finds facts to indicate, *inter alia*, that a startling event, observed by the declarant, occurred which produced sufficient nervous excitement in the declarant to still his reflective faculties, thus rendering the statement spontaneous and unreflective. *State v. Duncan* (1978), 53 Ohio St.2d 215, 7 O.O.3d 380, 373 N.E.2d 1234, paragraph one of the syllabus; *Potter v. Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, paragraph two of the syllabus. The out-of-court statement must be made " 'before there ha[s] been time for such nervous excitement to lose a domination over his reflective faculties,' " thus ensuring the statement is not the product of conscious fabrication. *State v. Wallace* (1988), 37 Ohio St.3d 87, 89, 524 N.E.2d 466, 469, quoting *Potter, supra*, at paragraph two of the syllabus.

The resolution of these factual issues is within the province of the trial judge. If the court's determination is reasonable under all the circumstances, it will not be reversed, as "an appellate court should allow a wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event." *State v. Duncan, supra*, 53 Ohio St.2d at 219, 7 O.O.3d at 383, 373 N.E.2d at 1237; *Potter, supra*, 162 Ohio St. at 500, 55 O.O. at 394–395, 124 N.E.2d at 146–147.

Appellant, relying on *State v. Huertas* (1990), 51 Ohio St.3d 22, 553 N.E.2d 1058, urges that, as a matter of law, when questioned by Officer Zieverink on October 10, several hours after the attack, Foster was under the influence of an ongoing startling event as he was being treated for painful injuries. In *Huertas,* the Supreme Court affirmed the admission of a declarant's excited utterance made while undergoing emergency-room treatment forty-five minutes after being stabbed.

Appellant's reliance on *Huertas* is, however, misplaced. There, the court admitted the utterance, not merely because the declarant was undergoing medical treatment following a brutal attack, but because of ample evidence indicating that the declarant was "very agitated," "in serious pain," and "had not calmed down" as a result of either the stabbing or the medical treatment. *Id.* at 31, 553 N.E.2d at 1068.

Here, unlike in *Huertas*, the evidence indicates that when he spoke with Officer Zieverink, Foster was not under the stress or excitement caused by the attack or the subsequent treatment for his injuries.

Robert Stewart, the physician treating Foster in the emergency room, stated that though Foster was in some pain and was shivering, he was not in shock and required no pain medication initially. Foster was not agitated, was lucid, and gave appropriate and responsive answers to questions.

Nurse Pamela Beck observed Foster for two hours. She was present during Officer Zieverink's questioning. It was her testimony that Foster gave appropriate responses to her questions and that he had the ability to reflect and to think about his answers.

Officer Zieverink questioned Foster for approximately one hour, with interruptions for medical treatment. During this questioning, Foster identified the perpetrators and other witnesses by name, stated the familial relationship between some of the attackers, identified one attacker's nickname, described the model and the caliber of the firearm he was threatened with, identified the make, model and year of the automobiles used in the attack, and described the lengthy series of events culminating in his arrival at the hospital.

Based on the record presented at the hearing, it is clear that the trial court reasonably found facts to indicate that Foster was not still under the "stress of excitement" when he spoke with Officer Zieverink, but rather that he "was in full possession of his cognitive faculties."

Appellant further contends that the trial court abused its discretion in concluding that Foster was not under the excitement of the attack on October 12 when he made a statement to Officers Lawson and Frisby. This interview was conducted nearly sixty hours after the attack. His attending physician, Dr. David Greenhalgh, stated that Foster was calm and "seemed to have his wits about him." Officer Lawson found Foster to be alert and responsive to his questions. The record is clear: Foster's statement was the product of calm reflection, rather than nervous excitement.

Therefore, the trial court correctly determined that Foster was not under the influence of a startling event when, from his hospital bed, he named the appellees as his attackers.

■ Appellant next contests the trial court's ruling denying the use, at the retrial, of Foster's direct testimony, taken under oath, in the first trial in May 1991.

The former testimony of a declarant may be introduced into evidence at trial. This exception to the hearsay rule is premised upon necessity and the circumstantial guarantees of trustworthiness surrounding the making of the declaration.

Pursuant to Evid.R. 804(B)(1), "[t]estimony given as a witness at another hearing of the same or a different proceeding" is not excluded if the declarant is "unavailable" as a witness, as defined under Evid.R. 804(A), and "if the party against whom the testimony is now offered * * * had an opportunity *and* similar motive to develop the testimony by direct, cross, or redirect examination." (Emphasis added.) The opportunity and similar motive to cross-examine, if present, can provide sufficient indicia of reliability of the out-of-court statement. *California v. Green* (1970), 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489; *State v. Madison* (1980), 64 Ohio St.2d 322, 18 O.O.3d 491, 415 N.E.2d 272; *State v. Woods* (1988), 48 Ohio App.3d 1, 548 N.E.2d 954.

No party denies Foster's tragic unavailability. Appellant does assert that appellees had sufficient opportunity to cross-examine Foster after his direct testimony ended.

The discovery of the defect in the indictment and the bill of particulars, during an *in camera* proceeding at the conclusion of appellant's questioning, interrupted the normal order of examination of Foster. Instead of moving for a mistrial, appellant urges, appellees could have proceeded to cross-examine Foster. This tactical decision, appellant claims, amounted to a waiver of the opportunity to cross-examine. *State v. Jester* (1987), 32 Ohio St.3d 147, 512 N.E.2d 962, certiorari denied (1988), 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 871.

Appellees were presented with the "naked opportunity" to cross-examine Foster. Opportunity alone, however, does not satisfy the trustworthiness requirements imposed by the evidence rules.[1]

Appellees were conducting their defenses claiming alibi. The revelation of the wrong date on the indictment drastically altered not only the scope and nature of any cross-examination that appellees would have conducted, but also removed any similar motive, need or incentive to cross-examine. The factual details of any examination had so changed that "there was no proper motive, consistent with their obligation to their clients, for defense counsel to cross-examine at all."

We hold, therefore, that the trial court's conclusion, in its well-reasoned opinion, that any opportunity to cross-examine was rendered meaningless in light

---

1. Our overruling of appellant's assignment of error is based upon an interpretation of the evidence rules alone. We need not reach whether appellees' rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution would have been compromised by the use of Foster's statements.

of the surprise disclosure of the date error, is correct as a matter of law. We will not disturb it here.

Having found insufficient guarantees of trustworthiness which would permit the use of Foster's hospital statements or his former testimony at appellees' retrial, we hold that the trial court properly suppressed the admission of the testimony. Appellant's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., HILDEBRANDT and GORMAN, JJ., concur.