**The STATE of Ohio**

**v.**

**McCARTHY.**

Hamilton County Municipal Court.

No. C98CRB48098C.

Decided Feb. 23, 1999.

*Angela Stout,* for plaintiff.

*Saul A. Fetter,* for defendant.

---

ELIZABETH B. MATTINGLY, Judge.

Defendant Emily R. McCarthy is charged with complicity to ethnic intimidation in violation of R.C. 2923.03. In more specific terms, the state alleges that she aided and abetted three young men, Aaron Plybon, Dennis Bell, and Mike Patterson, when they spray painted ethnic graffiti on the home of Daniel Krug in Cincinnati, Ohio.

On November 15, 1998, defendant McCarthy talked with her friend Dennis Bell about what they might do for the evening. At defendant's suggestion, they agreed to go "spray-painting" with Mike Patterson and Aaron Plybon. Defendant McCarthy purchased the paint in spray cans, and she drove her car to get her companions at about 9:30 that evening. They then proceeded to paint graffiti on several homes and parked vehicles. At each location, defendant McCarthy drove Bell, Plybon, and Patterson within several feet of the property they intended to vandalize. Defendant remained in her vehicle while the vandalism

was being accomplished and drove the young men away from the scene after they had finished the job.

After a number of homes and vehicles had been vandalized in this manner, Dennis Bell suggested that they spray paint the Krug home at 960 Yarder Drive. Bell had dated Jenny Krug some three years before the incident here and in December 1995, he was adjudicated responsible for assaulting her by breaking her nose.[1] The parties' stipulation is further that Bell assaulted Krug because he learned that she was Jewish. Krug, who lived in the house at 960 Yarder Drive with her parents and sister, also knew Aaron Plybon.

Defendant McCarthy was initially not in favor of going to the Krug house. Aaron Plybon testified that McCarthy did not want to go there because she was getting tired but that eventually all the participants agreed to go to the Krug house. Defendant herself told police her reason for initially not wanting to go to Krug house in a taped statement:

"No, I don't want to, you know cause we, up to that point, you know, we had hit nobody that it was personal."

Defendant then asserts that Bell was very persistent about going to vandalize the Krug house and that finally she agreed to drive her three male companions there.

Since defendant did not know where the Krug home was located, Dennis Bell gave her directions, telling her where to turn. According to both Dennis Bell and Aaron Plybon, there was no discussion in defendant's car that the graffiti that was going to be written on the Krug home would be ethnically derogatory.

As they had throughout the evening, when defendant McCarthy drove her vehicle near the Krug home, her companions jumped out of the vehicle, spray paint in hand, and walked several feet to the Krug house. They then proceeded to spray graffiti on the front picture window, the front door, and the garage door, including the words "Fucking Jewish bitch" and "Fuck the Jew bitch." Swastikas were also painted on the Krug home and a Star of David was painted on the front door. The swastikas were two feet tall; the "Fucking Jewish bitch" words were four feet tall and three feet wide and "Jenny the Jew Bitch" was written one and one-half feet wide and four feet long on the house.

Daniel Krug saw a car pulling away at 2 a.m. and then, in the early morning, discovered the ethnic slurs that had been spray-painted on his house. Patently, he did not give permission for the spray painting, called the police about the

---

1. The parties have stipulated that Bell was found guilty of criminal assault for the attack in 1995. Bell's attorney, who was present when Bell testified, disputed whether "conviction" was the proper terminology, since Bell was a juvenile at the time of the offense.

graffiti, and quickly scrubbed the offensive words and symbols off his property. Daniel Krug is not Jewish himself, but his wife is Jewish and they observe Jewish customs.

Defendant McCarthy saw what had been written by her male companions and, according to uncontradicted testimony, laughed with them as she drove the boys away. She was also amused that her companions had drawn the swastikas incorrectly.

R.C. 2927.12(A) defines the crime of ethnic intimidation as follows:

"No person shall violate section * * * 2909.06 [criminal damaging] * * * of the Revised Code by reason of the race, color, religion, or national origin of another person or group of persons."

R.C. 2909.06(A) states that the crime of criminal damaging is as follows:

"No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * [r]ecklessly, by means of * * * caustic or corrosive material."

Defendant McCarthy does not dispute that the Krug home was criminally damaged by the young men she had driven there. Likewise, she does not dispute that she bought the spray paint for her companions to vandalize property, that she drove them to the Krug home, and that what they wrote there was written by reason of Jenny Krug's religion or ethnicity. Further, she does not dispute that she drove them from the crime scene after having observed the offensive graffiti. What she does assert as a defense, however, is that she herself was unaware that the young men in her vehicle had any intention of writing ethnically offensive graffiti on the Krug home. As a result, she urges that she did not have the requisite criminal intent, in this case, recklessness, to be guilty of the crime of complicity to ethnic intimidation. The complicity statute, R.C. 2923.03(A), states in part as follows:

"No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense."

As noted previously, the state of mind at issue here is recklessness. Recklessness as a state of mind is defined in the Criminal Code at R.C. 2901.22(C) as follows:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

Thus, to prove its case against defendant McCarthy, the state must show that she recklessly aided or abetted her companions in spray painting ethnically based graffiti on the Krug home.

As the First District Court of Appeals noted in *State v. Elmore* (Aug. 14, 1996), Hamilton App. Nos. C–950225 and C–950256, unreported, 1996 WL 454826, aiding and abetting may be demonstrated by direct or circumstantial evidence and can be inferred from "presence, companionship and conduct before and after the offense is committed." See, also, *State v. Cartellone* (1981), 3 Ohio App.3d 145, 150, 3 OBR 163, 169, 444 N.E.2d 68, 74. However, a conviction cannot be sustained absent a showing that the defendant assisted, incited, or encouraged the crime. *State v. Woods* (1988), 48 Ohio App.3d 1, 6, 548 N.E.2d 954, 960; *State v. Sims* (1983), 10 Ohio App.3d 56, 58–59, 10 OBR 65, 67–69, 460 N.E.2d 672, 674–676. It appears to be universally held that for a defendant's actions to amount to complicity, the defendant must take some action that furthers the perpetration of the crime. *Smith v. State* (1931), 41 Ohio App. 64, 179 N.E. 696. Numerous courts have held that the mere presence of the defendant at the scene of a crime is not sufficient to prove that the defendant was an aide and abettor. *State v. Widner* (1982), 69 Ohio St.2d 267, 269, 23 O.O.3d 265, 266, 431 N.E.2d 1025, 1027–1028; *Columbus v. Russell* (1973), 39 Ohio App.2d 139, 68 O.O.2d 327, 316 N.E.2d 897, *State v. Starr* (1970), 24 Ohio App.2d 56, 58, 53 O.O.2d 167, 168, 263 N.E.2d 572, 573–574, *State v. Sims, supra.* In essence, approval or acquiescence must be accompanied by an express concurrence or the doing of something to contribute to an unlawful act to support a finding of aiding or abetting. *State v. Katz* (1976), 51 Ohio App.2d 14, 5 O.O.3d 122, 364 N.E.2d 1384, citing *Smith v. State, supra.* Ohio courts have held that connection to the criminal transaction preceding its occurrence can be slight as long as it is more than "mere presence." *State v. Lundgren* (Apr. 22, 1994), Lake App. No. 90–L–15–125, unreported, 1994 WL 171657. Only actions committed prior to or concurrent with the criminal act in question can support a finding of complicity; evidence of aiding and abetting *after* the fact is not a crime recognized in Ohio. *State v. Starr, supra.*

Although defendant McCarthy had known Dennis Bell for some seven or eight months prior to this incident, there was no evidence that she actually knew of his prior confrontation with Jenny Krug or its ethnic basis. Moreover, both Bell and Plybon testified at trial that they did not discuss any plans to spray paint ethnically derogatory words and symbols on the Krug home in the car prior to doing so.[2]

---

2. The court finds this testimony incredible in view of the prior events of the evening, the long friendships between the participants, and the fact that when the three young men left the car, each went to locations several feet apart at the Krug home, yet each wrote ethnically based graffiti totally unlike any graffiti they had written earlier in the evening. To believe that the

■    Thus, the court must evaluate whether the circumstantial evidence here proves complicity beyond a reasonable doubt.    As other courts have noted, participation in criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed.    *State v. Monroe* (1992), 81 Ohio App.3d 745, 612 N.E.2d 367.    The sufficiency of circumstantial evidence to prove a fact or to prove guilt depends, among other things, on whether reason and common sense lead us from the facts proved by real or direct evidence to the fact sought to be proved.    If the trier of fact determines that the connection between what is proved and what is sought to be proved is strong enough to support a finding of proof beyond a reasonable doubt, the circumstantial evidence is sufficient.    *State v. Lyons* (Sept. 6, 1991), Lake App. No. 90–L–15–129, unreported, 1991 WL 172887.

■    The court notes that under no interpretation of the facts here can defendant McCarthy be characterized as a mere bystander.    She suggested and agreed to criminally damage homes and vehicles, she bought the spray paint used by her companions, drove them to the Krug home, and assisted them in their escape from the crime scene.    Moreover, there was no testimony that she discussed with her companions any limitations on what they should write on the Krug property or any other property damaged that evening.    When a person agrees to criminally damage property, provides the material to do so, and elects to remain in the car while the graffiti is being spray painted, she is accepting the risk that her companions might write graffiti that she did not subjectively anticipate.    It is not necessary that the accused be in a position to foresee the precise consequences of her conduct, only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that is was within the scope of the risk created by his conduct.    *State v. Robinson* (1994), 98 Ohio App.3d 560, 649 N.E.2d 18.

It is also telling in evaluating her intent that, unlike the other homes and vehicles the group had vandalized that evening, defendant McCarthy was specifically aware of a personal animus motivating the actions at the Krug house.    With such explicit knowledge that something personal was behind Dennis Bell's desire to vandalize the Krug house, defendant elected to drive him and his companions there.    In so doing, she disregarded the known risk that the personal motivation of Dennis Bell could stem from any of several personal factors, one of which was the religion or ethnicity of the Krug family.    Her laughter with her companions concerning what they had written on the Krug home and her comments regarding the misshapen swastikas are additional circumstantial evidence that supports

---

young men discussed what they were going to write on the Krug house only during the few steps from the car to the home and not in the vehicle in defendant's presence as they drove there strains credulity.

the finding of her complicity in their actions.[3]   In addition, having observed the ethnically derogatory graffiti on the Krug home, defendant drove her companions from the scene.

Actions of a similar nature were found to support a finding of complicity to criminal damaging and robbery in *State v. Tribble* (Oct. 13, 1982), Summit App. No. 10685, unreported, 1982 WL 2795.   Defendant Tribble had been driving his nephew, Travis Rice, to various locations for an entire evening.   About midnight, Tribble positioned the vehicle close to the victims' car in a nearly empty parking lot and waited without objection while Rice smashed the victims' car windows and robbed them.   The court further found that Tribble's actions of driving the car away from the scene with the knowledge of what Rice had done supported a finding of complicity in the entire act.

For the reasons stated above, the court finds defendant McCarthy guilty of complicity to ethnic intimidation in violation of R.C. 2923.03.

*Judgment accordingly.*

---

**3.**   The court is not suggesting that defendant's actions following her companions' ethnically derogatory graffiti constitute "aiding or abetting."   However, these actions are circumstantial evidence of her state of mind prior to the commission of the crime.