OPINION.
On March 1, 1998, at a Captain D's restaurant in the Swifton area of Cincinnati, defendant-appellant Ezekiel Gray was speaking with a cashier, Carla Beamon, when a masked robber entered the restaurant. While Gray ran to the bathroom and locked himself inside, the robber grabbed Beamon and, according to Beamon, put a gun to her back. He then forced her to the rear of the premises and told the restaurant's manager to put money in a duffel bag. He said that Beamon would be shot with hollow-point bullets if the manager did not comply. After the manager put money in the bag, the robber forced the manager and Beamon into a walk-in refrigerator, where Gray released them once the robber had fled.
On March 22, 1998, another robbery occurred at a Wendy's restaurant in St. Bernard, Ohio. Gray, an employee, had arrived unexpectedly that morning and was put to work because his manager, Christopher Dick, had been left shorthanded. Gray's duties entailed working inside and out, and he entered and left the restaurant through the back door. At one point, a masked robber, who acted as though he had a weapon at Gray's back, led Gray back inside the restaurant. To Dick, it looked like the robber had a gun. The robber threatened Gray's life, which scared Dick and another employee, Valerie Greenlee. The robber then forced Gray, Dick, and Greenlee into the restaurant's back office by, according to Greenlee, threatening to shoot them. He demanded that money be put into his knapsack. After Dick did so, he fled.
In the ensuing investigation, Gray waived his Miranda rights and gave statements to the police admitting his involvement in the robberies and identifying the robbers as two of his brothers. Regarding the Captain D's robbery, he gave an audiotaped statement that described in detail the incident. He admitted to helping plan the robbery with his brother Shawn. He also admitted that, before he had let Beamon and the manager out of the refrigerator, he had checked to make sure that Shawn was gone. Regarding the Wendy's robbery, he gave an audiotaped statement admitting that he had provided the mask used by his brother Christopher, and that Christopher and he had planned and staged the robbery to make it look like he was the victim. (He denied that there had actually been a gun.) Also, he provided a written statement acknowledging his guilt.
Gray was charged with four counts of aggravated robbery with accompanying firearm specifications and four counts of robbery. A jury found him guilty under R.C. 2911.02(A)(2) of two of the robbery counts: one involving the Captain D's robbery and one involving the Wendy's robbery. The trial court sentenced him to four years' incarceration on each count, with the sentences to run consecutively. Gray now appeals.
In his sole assignment, Gray maintains that his robbery convictions under R.C. 2911.02(A)(2) were based on insufficient evidence and were against the manifest weight of the evidence. R.C. 2911.02(A)(2) provides, "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another."
To reverse a conviction for insufficient evidence, an appellate court, reviewing the evidence in the light most favorable to the prosecution, must conclude that no reasonable trier of fact could have found the defendant guilty.[1] In reviewing a manifest-weight issue, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[2] Applying these standards, we affirm Gray's convictions.
Concerning the Captain D's crime, the masked man took money from the restaurant while grabbing and threatening to shoot Beamon. It is clear that such conduct satisfied the elements of robbery.
And Gray, too, was properly charged for the robbery as an accomplice. Accomplices to a crime may be punished as if they were the principal offenders.[3] R.C. 2923.03, the complicity statute, provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]"[4] To aid and abet, one must assist, incite, or encourage a crime.[5]
Mere presence of an individual at the scene of a crime is not sufficient to prove that he or she was an accomplice.[6] But aiding and abetting may be demonstrated by direct or circumstantial evidence and can be inferred from "presence, companionship and conduct before and after the offense is committed."[7]
Here, Gray's convictions rest upon his own audiotaped confessions to police. Although he did leave the immediate scene of the Captain D's robbery by escaping into the bathroom, he admitted that he had helped plan the robbery. Also he served as a lookout in that he admitted that he did not let Beamon and the manager out of the refrigerator until he had made sure that his brother was gone. From this evidence, a reasonable jury could — and did — find Gray guilty of the robbery.
Gray argues, however, that his incriminating statements to the police were manipulated and therefore should have been disregarded. We disagree. The record indicates that Gray's confession was very much an act of free will. There is no evidence of physical deprivation, mistreatment, threats, inducements, or coercion from the police.[8] Additionally, Gray waived his Miranda rights and signed a form that stated that no promises or threats were made to him. Thus, we hold that the conviction for the Captain D's robbery was not based on insufficient evidence and was not against the manifest weight of the evidence.
Regarding the incident at Wendy's, Gray gave audiotaped and written confessions admitting his planning of and involvement in the crime. As in the Captain D's robbery, we find no evidence that this confession was coerced. The officers' questioning was free-flowing and conversational, and not abusive. There is no indication that Gray was misled into believing that his participation in the robbery was any less serious than that of the principal offender.
Gray claims, however, that the offense was not robbery under R.C. 2911.02(A)(2) because the element of threatening physical harm was staged, without anyone ever really being threatened with physical harm. But, although Gray was never actually threatened because he was part of the staged part of the robbery, Dick and Greenlee were threatened. The robber acted as if he had a gun, threatened Gray's life, and forced Dick and Greenlee into the back office to retrieve the money. From Dick's and Greenlee's perspectives, Gray's life was in danger — the threat element should be viewed from the perspective of the actual victims, not the fake victim. If it were otherwise, any defendant could say that he didn't really intend to pull the trigger, so there wasn't any "threat." To pose the issue thus supplies the answer. And, as far as Dick and Greenlee knew, the robber could just as easily have turned the gun on them as he had on Gray. Under the circumstances, we hold that the jury reasonably determined that the elements of R.C. 2911.02(A)(2) were satisfied, with Gray being an accomplice to the crime.
Therefore, Gray's sole assignment is overruled. We affirm the judgment of the trial court.
Judgment affirmed.
Gorman, P.J., and Shannon, J., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[2] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720.
[3] State v. Coleman (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph two of the syllabus.
[4] R.C. 2923.03(A)(2).
[5] State v. Woods (1988), 48 Ohio App.3d 1, 6, 548 N.E.2d 954,960.
[6] State v. Widner (1982), 69 Ohio St.2d 267, 269,431 N.E.2d 1025, 1027.
[7] State v. Pruett (1971), 28 Ohio App.2d 29, 34,273 N.E.2d 884, 887.
[8] See State v. Loza (1994), 71 Ohio St.3d 61, 66,641 N.E.2d 1082, 1094 (quoting Colorado v. Connelly [1986], 479 U.S. 157,167, 107 S.Ct. 515, 522) (a confession is involuntary if it is the product of "coercive police activity").