DECISION AND JUDGMENT ENTRY
This is a consolidated appeal from: 1) the conviction of Francisco J. Ramirez for trafficking in marijuana, a violation of R.C. 2925.03, and the sentence ordered by the Wood County Court of Common Pleas for Ramirez's conviction; and 2) a denial by the Wood County Court of Common Pleas of a motion for a new trial filed by Ramirez following his initial appeal to this court (the motion for new trial was considered by the trial court following a remand order from this court). Because we find the evidence presented against Ramirez was insufficient as a matter of law to support a conviction for trafficking in marijuana, we vacate his conviction and sentencing and find the ruling on the motion for new trial is moot.
Undisputed testimony presented at Ramirez's jury trial shows that a twenty-eight year old man living in Rudolph, Ohio who was involved in trafficking illegal drugs, approached agents assigned to a drug enforcement task force in 1998 and asked for protection for himself and his family because he believed his life was in danger. The agents offered him the desired protection in exchange for his work as an informant. At first, he refused the deal, but after the agents got a search warrant and found evidence on his property that would implicate him in conspiracy for drug offenses, he agreed to serve as an informant in exchange for no charges being filed against him. Eventually, he became a paid informant.
While working as a paid informant, the young man made and received some phone calls at his home, which he recorded on tape. Included in those taped phone calls, starting in October 1998, were several conversations with Ramirez's brother, Saul Ramirez ("Saul"). Saul agreed to supply the paid informant with one hundred pounds of marijuana. The paid informant and the agents working with him sent $3,000 to Saul via Western Union in October 1998, after Saul said he would need the money to cover the cost of transporting the marijuana from Texas, where Saul lived, to the paid informant in Ohio.
Nothing more happened for a time, and then Saul called the paid informant and orchestrated a meeting between the paid informant and an individual named Cesar in Lansing, Michigan on June 25, 1999. On that date, the paid informant, accompanied by agents assigned to the Drug Enforcement Agency task force in Toledo, Ohio, traveled to Lansing, Michigan, met Cesar, who was by himself, and received from Cesar four bundles (some wrapped in T-shirts and some wrapped in garbage bags) full of marijuana. Even though more money was owed for the marijuana according to the deal reached between the paid informant and Saul in their taped phone conversations ($800 per pound was the agreed price), no money was paid to Cesar at the time he delivered the drugs.
In early July, the paid informant was contacted by an individual named Israel Ramirez ("Israel"), who told the paid informant to send partial payment for the marijuana to Israel in Pontiac, Illinois. In response, the paid informant and the drug enforcement agents sent $925 to Israel in Pontiac, Illinois via Western Union.
The paid informant was again contacted by telephone by the individuals in Texas with whom he had been dealing. The informant was told he needed to make final payment for the marijuana he had already received in Lansing, Michigan in June 1999. The paid informant made arrangements for a meeting at the Day's Inn in Perrysburg, Ohio on July 20, 1999.
On July 20, 1999, the paid informant, along with an undercover police officer, went to a room at the Day's Inn in Perrysburg, Ohio. In an adjoining room, other agents working for the drug enforcement task force in Ohio set up surveillance of the room where the paid informant and undercover police officer waited. The surveillance included video recording equipment. The camera for the video recording equipment was located in a radio clock placed in the room with the paid informant and undercover police officer.
The paid informant received a telephone call from Israel, who said his brother was on his way to the hotel to pick up the money. Ramirez arrived at the Day's Inn, parked the van he was driving approximately twenty feet away from the door to the room where the paid informant and undercover police officer waited, and went to the door of the room. Ramirez's wife and two small children (both aged two or under) waited in the van.
The paid informant, undercover police officer, and Ramirez engaged in conversation for some time. Eventually, the undercover officer left the room, and the agents waiting in the adjoining room rushed in and arrested Ramirez for trafficking in marijuana. No money was ever brought to Day's Inn or given to Ramirez.
Ramirez was originally charged by criminal complaint in the Perrysburg Municipal court for selling 92 pounds of marijuana (the marijuana received by the paid informant and undercover officer in Lansing, Michigan in June 1999), a violation of R.C. 2925.03(A). The complaint also included specifications. The case against Ramirez was bound over to the grand jury sitting in Wood County, Ohio.
The grand jury returned an indictment charging Ramirez with one count of trafficking in marijuana, in violation of R.C. 2925.03. The indictment specified that Ramirez sold or offered to sell more than two hundred grams of marijuana and that the offense was committed in the presence of a juvenile. Ramirez pleaded not guilty to the charge and specifications.
In April 2000, following trial, the jury returned a verdict finding Ramirez guilty of trafficking in marijuana. The jury specified that the amount of marijuana involved was approximately 33,200 grams, and that the offense was committed in the vicinity of a juvenile. The trial court subsequently accepted the jury verdicts and ordered a presentence investigation report.
Prior to sentencing, Ramirez filed a written motion for acquittal, in which he renewed a Crim.R. 29(C) motion he presented at trial. He also filed a written motion for a new trial and an affidavit of indigency. He argued that the trial court should not impose a mandatory fine on him because he was indigent. The trial court denied the motions for new trial filed by Ramirez.
The trial court then sentenced Ramirez to serve a mandatory ten year prison term. The trial court took the matter of Ramirez's indigency under advisement to permit the state to conduct further investigation into whether he owned valuable assets. In a separate judgment entry, the trial court found Ramirez eligible for appointed counsel on appeal and entered an order appointing counsel.
Ramirez's new appointed counsel filed a motion seeking money to hire expert assistance. Ramirez's new counsel said that the defense had reason to believe that the audio and or audio/video tapes in the case had been tampered with before trial. He asked for money to hire an expert to examine the tapes put into evidence at trial for the possibility that someone had tampered with the tapes.
The trial court granted the motion for money to hire expert assistance. In the same judgment entry, the trial court ordered Ramirez to pay a mandatory fine of $10,000.
In June 2000, Ramirez filed a second motion for a new trial in which he argued that he had just recently discovered a twenty-two to twenty-three second "gap" in the videotape made by federal and state agents just prior to his arrest in a hotel room in Perrysburg, Ohio, and introduced into evidence at his trial. The videotape showed what took place in the room between Ramirez, the paid informant and the undercover police officer just prior to Ramirez's arrest for trafficking marijuana. Ramirez argued that exculpatory statements were made during the portion of the tape that is now erased. He said that he was entitled to a new trial pursuant to Crim.R. 33(A)(2), because the expert he hired to analyze the videotape said that the tape was tampered with post-production.
To preserve Ramirez's time for filing an appeal from his conviction and sentencing, the trial court entered a ruling on Ramirez's renewed motion for a new trial without waiting for a response from the state. The trial court noted that the expert hired by appellant opined that the twenty-two second gap on the videotape may have been erased. The trial court said that evidence only showed the possibility of misconduct on the part of the state and granted Ramirez additional time to refile his motion if he got more evidence from his expert to show that the tape was erased.
Ramirez then filed a notice of appeal from the sentencing judgment entry of the trial court and from the judgment entry of the trial court denying his motion for a new trial. Ramirez subsequently filed a renewed motion for a new trial in the trial court, and sought an order from this court, which was granted, to remand the case to the trial court for a ruling on the renewed motion for a new trial.
Following remand, the trial court denied Ramirez's motion for more money for further testing of the videotape and the machinery used to record the tape. After holding a hearing and taking additional testimony from the state regarding how the gap was created, the trial court denied Ramirez's renewed motion for a new trial.
This court then reinstated Ramirez's original appeal. Ramirez subsequently filed a second appeal, from the trial court's denial of his renewed motion for a new trial, so that he could also challenge that ruling in addition to challenging his conviction and sentencing. At the request of Ramirez, this court consolidated the two appeals.
Ramirez has presented four assignments of error for consideration. The assignments of error are:
 "I. THE EVIDENCE UPON WHICH APPELLANT'S CONVICTION IS BASED IS INSUFFICIENT AS A MATTER OF LAW.
 "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY INSTRUCTING THE JURY ON THE OFFENSE OF COMPLICITY, AS THERE WAS NO EVIDENCE OF APPELLANT'S INVOLVEMENT WITH THE SALE OF THE DRUGS AT ANY TIME PRIOR TO HIS ARREST; ACCORDINGLY, THE EVIDENCE ADDUCED AT TRIAL, VIEWED IN A LIGHT MOST FAVORABLE TO THE PROSECUTION, SUPPORTS APPELLANT'S INVOLVEMENT ONLY AS AN ACCESSORY AFTER THE FACT, A CRIME NOT RECOGNIZED IN OHIO.
 "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT BY DENYING HIM A NEW TRIAL.
 "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY IMPOSING A MANDATORY FINE, AS APPELLANT FILED AN AFFIDAVIT OF INDIGENCY PRIOR TO SENTENCING, AND THE STATE FAILED TO ADDUCE ANY EVIDENCE CONTRA APPELLANT'S AFFIDAVIT AND HIS TESTIMONY IN SUPPORT THEREOF."
In support of his first assignment of error, Ramirez argues that the evidence upon which his conviction for trafficking in marijuana is based is insufficient as a matter of law. Ramirez argues that the evidence presented against him by the state did not show that he aided or abetted his brothers, Saul and Israel, when they made arrangements to sell marijuana to the paid informant or when the marijuana was actually delivered in Lansing, Michigan.
He notes that pursuant to the elements of the crime of trafficking in marijuana found in R.C. 2925.03(A) and (C)(3), the crime was complete when Saul and Israel offered to sell marijuana to the paid informant and when the marijuana was delivered to the paid informant. He says that the state indicted him as a principal offender, but relied upon the provisions of the "complicity statute", R.C. 2923.03, to say that he had the same culpability as a principal offender because he aided or abetted others in the commission of the offense of trafficking in marijuana. Ramirez says the state did not meet its burden to show that the complicity statute applies in this case, because in Ohio a person cannot aid and abet another in the commission of a crime as an "accessory after the fact".
He reiterates that the state did not show that he was in any way involved in the arrangements made to sell or deliver the marijuana to the paid informant. The state did not show that he was sent any of the wire transfers of money that were made as a condition for the delivery of the marijuana. Finally, no money was transferred to Ramirez at the Day's Inn on the date of his arrest.
He argues that since the state did not show that he had any involvement in the crime prior to its commission, the state was left only with the theory that he was a co-conspirator. However, the state did not indict him for conspiracy and did not try to prove that he was a co-conspirator. Instead, the state conceded, at trial following an objection raised by the defense after a witness used the word conspiracy, that it would come out in testimony that Ramirez was not involved in a conspiracy.
Ramirez further argues that he was not at the hotel to pick up "buy money" for the marijuana, rather he was there to get either a title for or a refund of money paid by his family to the paid informant for a vehicle they purchased from the paid informant as part of their car dealership business in Texas. He says that even if the jury did not believe his testimony, and even if he was in actuality at the Day's Inn to pick up "buy money" for marijuana, that act was an insufficient basis for an aiding and abetting instruction, since he could only be considered an "accessory after the fact", which is not a recognized crime in Ohio.
The state responds that it had the burden to prove that "Ramirez knowingly sold or offered to sell marijuana in an amount exceeding twenty thousand grams" pursuant to the charge brought against Ramirez. The state says that Ramirez "acted in complicity with others in committing the trafficking offense." The state argues that Ramirez was part of a chain of supply, and that he "is as culpable as the other marijuana sellers are because he acted as a link in the chain of supply by agreeing to pick up the money owed for the marijuana."
The state contends that the "transaction" was not "complete" at the time the marijuana was delivered to the paid informant and undercover officer in Lansing, Michigan. The state points to the testimony of its witnesses at trial that the deal was that the marijuana would be "fronted" to the paid informant: that is, that the marijuana would be given to him to be sold, and payment would be expected at a later time, from his profits. The state concludes its argument: "Although the marijuana had been transferred prior to Ramirez's involvement in the transaction, he aided and abetted the drug transaction and cannot escape culpability simply because he was only involved in the final payment stage."
The Supreme Court of Ohio has set the following standard for cases where a defendant challenges a conviction on the basis of the sufficiency of the evidence:
 "With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560." State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387.
Keeping this standard in mind, we have reviewed the following law and have applied the facts to the law to reach our conclusion that appellant is correct that his conviction for trafficking in marijuana is based upon insufficient evidence.
R.C. 2925.03(A)(1), the statute Ramirez was charged with violating, provides in pertinent part:
"(A) No person shall knowingly do any of the following:
"(1) Sell or offer to sell a controlled substance * * *."
Subsection (C)(3) of R.C. 2925.03 further provides:
 "If the drug involved in the violation is marihuana or a compound, mixture, preparation, or substance containing marihuana other than hashish, whoever violates division (A) of this section is guilty of trafficking in marihuana."
A "sale" for drug offenses is defined in R.C. 3719.01 (AA). The definition reads as follows:
 "(AA) `Sale' includes delivery, barter, exchange, transfer or gift, or offer thereof, and each transaction of those natures made by any person, whether as a principal, proprietor, agent, servant, or employee."
Construing this definition in conjunction with the elements listed in R.C. 2925.03((A)(1) and (C)(3), it becomes clear that Ramirez is correct that the crime of trafficking in marijuana was complete when Saul offered to sell marijuana to the paid informant, and when Cesar delivered the marijuana to the paid informant and the undercover officer in Lansing, Michigan. See, also, State v. Scott (1982), 69 Ohio St.2d 439, 440-441.
As previously noted, the state charged Ramirez as a principal offender because of provisions found in the "complicity statute", R.C. 2923.03. R.C. 2923.03 provides, in pertinent part:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"* * *
"(2) Aid or abet another in committing the offense;
"* * *
 "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
Ohio law imposes culpability upon those who aid and abet only after evidence is presented to prove beyond a reasonable doubt that:
 "the accused advised, hired, incited, commanded, or counselled [sic] the principal to do the act. In short, a conspiracy to do the act must be proven. In the absence of a conspiracy, or some preceding
connection with the transaction, one does not aid or abet if he merely sees a crime being committed." State v. Starr (1970), 24 Ohio App.2d 56, 58. (emphasis added). See, also, State v. Woods (1988), 48 Ohio App.3d 1, 17, 18 (man who witnessed a murder, helped the murderer fabricate an alibi and dispose of murder weapon after the crime was not criminally liable as an accessory after the fact).
The statutory provisions and pertinent case law above discussed show that the crime of trafficking in marijuana is complete when an offer to sell is made or when the delivery of the marijuana is made. Therefore, even though the state argues that the "transaction" was not complete until Ramirez arrived to accept payment for the marijuana, the actual crime of trafficking in marijuana was complete before Ramirez became involved in the "transaction". In this case, the state failed to show that Ramirez had any preceding connection to the crime of trafficking in marijuana that was complete when Saul offered to sell marijuana to the paid informant or when Cesar delivered the marijuana to the paid informant and the undercover police officer. Furthermore, the state did not charge Ramirez with being involved in a conspiracy to traffic marijuana.
The case relied upon by the state to argue that Ramirez is culpable as a "link in the chain of supply", State v. Osborne (Aug. 30, 2000), Medina App. No. 3008-M, unreported, is distinguishable from this case. In Statev. Osborne, id., the defendant acted as a middleman to connect a paid informant with a drug dealer who sold marijuana to the paid informant. The defendant in that case clearly aided and abetted in the events preceding the actual commission of the crime of trafficking in marijuana.Id. The court in State v. Osborne was never asked to consider whether a person who provided assistance after the crime of trafficking in marijuana was complete could be liable as a "link in the chain of supply."
For the reasons explained above, we conclude that Ramirez's conviction for trafficking marijuana is, as a matter of law, based upon insufficient evidence. Ramirez's first assignment of error is well-taken.
Our disposition of the first assignment of error renders the remaining assignments of error moot. The judgment of the Wood County Court of Common Pleas is reversed. Pursuant to App.R. 12(B), we order Ramirez's conviction and sentencing vacated and we order him discharged. The state is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, J.
James R. Sherck, J. and Mark L. Pietrykowski, P.J. CONCUR.