## TSURUDA *v.* T. F. FARM.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED OCTOBER 7, 1907. DECIDED OCTOBER 21, 1907.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

REPLEVIN—*evidence—witnesses—estoppel.*

The variance between the brand on a horse, stated in the complaint, and the evidence, there being other evidence and marks of identification and the judge having examined him, is not fatal.

Refusal to allow defendant to testify to his recollection of the former testimony of an absent witness is not erroneous, the effort to obtain the attendance of the witness not being sufficient to show that he was unavailable.

The plaintiff was not estopped from bringing this action by his conduct in seeing the horse in the defendant's possession on different occasions and talking with the defendant about the best method of feeding him without claiming ownership.

OPINION OF THE COURT BY HARTWELL, C.J.

The plaintiff brought replevin in the district court of Honolulu for "one Puakea (Dun colored) horse, with black mane and tail and dark legs, and branded on right flank M E (the

latter letter being indistinct)," and the defendant obtained judgment. On appeal to the circuit court, jury being waived, the plaintiff in November, 1906, obtained judgment which was set aside and a new trial granted for absence of a material witness for the defendant, to wit, one Hyoda. In December the case came on again for trial resulting in a decision for the plaintiff.

The defendant's exceptions are (1) to the denial of his motion for a nonsuit for a material variance between the description in the complaint and bill of sale of the horse put in evidence by the plaintiff, which is translated from its Chinese characters to read: "This bill of sale for one red horse for the price of $26.00 and the money was paid in full today, and branded on the left hind leg with a brand M E   Dated December 27th, 1903, Kong T.   In and stamped Kong Hoon;" (2) to the refusal to allow the defendant to testify from his recollection as to the testimony given by the witness Hyoda in the lower court, the defendant having obtained a subpoena for Oahu issued November 26, and, upon its return December 6, unfound, another subpoena the same day for Maui, returned unfound December 18, the day the case came on for trial; (3) to the decision on the ground of the material variance above mentioned.

The plaintiff's witnesses described the horse as of a "dirty white color, the color of the wall," designated by the court as "coffee au lait." This answers well enough the description in the complaint, "dun colored," as well as the description in the bill of sale, "red horse." The brand, stated in the complaint to be M E on the right flank and in the bill of sale M E on the left hind leg, when the horse was examined by the court, was claimed by defendant's attorney to be W F on the right hip, which the plaintiff explained by saying, "The hair was long before and it looked blurred. My mark is exactly the same with the exception of that." The plaintiff, corroborated by other witnesses, identified the horse by pointing out, among

other marks of identification, a mark on the right eyelid, a piece of which had been accidentally cut off, he said, while the horse was in his possession.

The cases cited by the defendant are to the effect that a complaint for two bay horses, when the proof shows that one of them is a sorrel horse, is a fatal variance (*Taylor v. Riddle,* 35 Ill. 567); that the recorded brand and the brand upon the animal must correspond or the discrepancy be satisfactorily explained (*Myers v. State,* 24 Tex. Ap. 334; 6 S. W. 192); that a brand recorded as upon the hip, while the evidence showed it to be on the ribs, is too great a variance (*Priesmouth v. State,* 1 Ib. 480); that a recorded brand as on the left hip, with evidence that it is on the side, did not preclude admissibility of the record in evidence, and that the record, unsupported by other evidence, would not be sufficient proof of ownership (*Harwell v. State,* 22 Ib. 251; 2 S. W. 606); that a mortgage of twenty-five head of cattle branded with a specified brand on the left side and "Z" on both hips, would not include eighteen head of cattle with the same brand on the left side and the remaining seven with "Z" on both hips (*N. H. Cattle Co. v. Belby,* 37 Mo. Ap. 43); and that it is error to instruct a jury that they might disregard description of brands in determining the sufficiency of a description (*Packers' Bank R. R. Co.,* 114 Ia. 621; 87 N. W. 653; *Deborb v. Johnson,* 11 Colo. Ap. 402).

In this case, however, the judge who heard the evidence and examined the horse was satisfied that it belonged to the plaintiff and we cannot, as matter of law, say that he was wrong. The discrepancy between the complaint and the evidence appears to have been explained to his satisfaction and there was evidence to support his finding.

The court having ruled at the trial of this cause that the defendant must show that the witness was absent from the jurisdiction in order to testify to his former evidence, we have now to consider the correctness of this ruling. In *Brown v. Spreckels,* ante, pp. 91, 104, the testimony of one Macfarlane,

taken at a previous trial of the case, was read in evidence over objection upon the showing that he had left for California six or eight months before the trial and had not returned "although apparently he had been expected to return before the trial." It was held to be unnecessary to say "whether the testimony was properly admitted or not" or "whether the error, if there was error in admitting it, was harmless, because, as it is contended, substantially the same testimony was given by another witness." The recital from memory of former evidence is open to grave objections. Memory is defective and, consciously or not, may play strange antics with the facts when not aided or restrained by writings, and with no one present to corroborate or contradict, the absent witness may be made to say things which, if he had a chance, he would at once deny having said. There is no opportunity to cross-examine him or test the accuracy of the recital of his testimony and yet there is no distinction in principle between admitting oral statements and written notes or official records or transcripts by a stenographer.

"The principle upon which depositions and former testimony should be resorted to is the simple principle of necessity, —i. e. the absence of any other means of utilizing the witness' knowledge. If his testimony given anew in court cannot be had, it will be lost entirely for the purposes of doing justice if it is not received in the form in which it survives and can be had. The only inquiry, then, need be: Is his testimony in court unavailable? We may of course distinguish further between testimony unavailable by any means whatever and testimony unavailable without serious inconvenience. The common-law rulings certainly stopped at unavailability of the former sort; conditions of the latter sort rest wholly on statutory sanction. But the common-law principle clearly went in theory as far as the former line, i. e. there are indications of a principle broad enough to sanction any case in which the present testimony is in fact *unavailable by any means whatever.* Such a broad principle was never fully and consistently enforced in practice; but it clearly existed in gremio legis." 2 Wig. Ev. Sec. 1402.

"If the witness has disappeared from observation, he is in effect unavailable for the purpose of compelling his attendance. Such a disappearance is shown by the party's *inability to find* him after diligent search. The only objection to recognizing this ground of unavailability is the possibility of collusion between party and witness; but supposing the Court to be satisfied that there has been no collusion and that the search has been bona fide, this objection loses all its force. For *former testimony* this cause of unavailability has long been recognized." Ib. Sec. 1405.

The unavailability of a witness may result from his death, his absence from the jurisdiction, his disappearance and inability to find him, his illness, infirmity, age or official duty preventing his attendance, insanity, loss of memory, speech or sight or disqualification by infamy. The unavailability of the witness for purposes of testifying, if shown to the satisfaction of the trial court and with proper limitations to guard against collusion or surprise or the giving of undue advantage avoidable by continuance, is generally sufficient in civil, if not in criminal, cases to admit evidence of his former testimony. This is shown in the elaborate discussion of the subject in Wigmore, supra, Sec. 1401 et seq., and in the author's citations; and see 1 Gr. Ev. 16th Ed., Sec. 163 g.; 1 Elliot on Evidence, Ch. 23.

After the defendant's attorney had stated the showing which he could make as ground for admitting the former evidence the court sustained the plaintiff's objection to its admission on the ground that "In order to render this testimony admissible you must show that this Japanese is a witness beyond the court's jurisdiction." This statement of the law was incorrect but the ruling excepted to was right since the efforts to obtain the witness were not sufficient to show his unavailability by reason of absence from the jurisdiction or for any other recognized cause.

We cannot sustain the defendant's claim that the plaintiff was estopped from bringing this action by reason of his failing

to claim the horse when he saw him in the defendant's possession and talked about the horse with the defendant without suggesting his own ownership.

Exceptions overruled.

*S. F. Chillingworth* for plaintiff was not called.

*W. W. Thayer* for defendant.