987 P.2d 959

**STATE of Hawai'i, Petitioner–Appellee,**

v.

**Alomalietoa SUA, Respondent–Appellant.**

No. 21480.

Supreme Court of Hawai'i.

Oct. 28, 1999.

As Amended Nov. 8, 1999.

after, the "ICA's opinion"], vacating the first circuit court's judgment, guilty conviction, and sentence, filed on March 9, 1998, and remanding the case for a new trial. The prosecution argues that the ICA should not have held that the respondent-appellant Alomalietoa Sua's right to confrontation was violated at trial. Specifically, the prosecution suggests that the ICA erred in holding that "receipt of a witness's grand jury testimony under the past recollection recorded exception to the rule against hearsay at the criminal trial of [Sua] violated the right of confrontation guaranteed him by the Hawai'i Constitution." ICA at 78, 987 P.2d at 976.

We agree with the prosecution that the ICA's holding was erroneous. In contrast to the ICA's opinion, we hold that, under certain circumstances, receipt of grand jury testimony pursuant to a firmly rooted exception to the general rule against hearsay may adequately preserve a defendant's right of cross-examination. We leave undisturbed the ICA's holding that there was substantial evidence supporting the jury's guilty verdict. Furthermore, we hold that the Sua's remaining points of error on appeal are without merit. Accordingly, we reverse the ICA's opinion and affirm the trial court's judgment, guilty conviction, and sentence, filed on March 9, 1998.

## I. BACKGROUND

### A. Factual Background [1]

Jonah Gooman's grandmother owned two rental units in a building in Waipahu, located in the City and County of Honolulu, State of Hawai'i. Sometime during the week prior to June 18, 1996, Sua contacted Gooman and asked him for a refund of deposit money relating to a rental unit that Sua's brother had recently vacated. Gooman explained to Sua that he knew nothing about the deposit money.

Bryan K. Sano, Deputy Prosecuting Attorney, for the petitioner-appellee State of Hawai'i on the writ.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by LEVINSON, J.

The petitioner-appellee State of Hawai'i applies to this court for a writ of certiorari to review the opinion by the Intermediate Court of Appeals (ICA) in *State v. Sua*, 92 Hawai'i 78, 987 P.2d 976 (Haw.Ct.App.1999) [herein-

---

1. This summary is compiled from the grand jury testimony of Jonah Gooman, taken on July 23, 1997.

On June 18, 1996, Gooman was driving an automobile in which Sua, Cory Kaowili, and Trent Puahi were the passengers. All four had known each other since elementary school. While Gooman was driving, Sua again demanded the deposit money. When Gooman stopped the car and looked back, he noticed that Sua was "fiddling with a gun." Sua continued to demand money and then struck Gooman in the head with the butt of the gun. Kaowili gave Sua approximately $120.00 in the hopes that Sua would "back off." Sua then exited the car.

### B. *Procedural History*

On July 23, 1997, the grand jury returned an indictment against Sua, charging him with robbery in the first degree, pursuant to Hawai'i Revised Statutes (HRS) § 708–840(1)(b) (1993),[2] in connection with the foregoing events.

On December 24, 1997, during Sua's trial, Kaowili testified in relevant part as follows:

[Deputy Prosecuting Attorney (DPA)]: Did a detective by the name of Derek Shimatsu call you on the telephone on Thursday, July 11th—

Kaowili: Not that I remember.

[DPA]:—1996?

Kaowili: No.

[DPA]: You never talked to a detective in connection—

Kaowili: No.

[DPA]:—with this case?

Kaowili: No.

. . . .

[DPA]: Would it help you to remember if you looked at the transcript of the conversation you had with the detective?

Kaowili: That's why I don't even remember any of this what I looked at earlier inside the witness room when you gave it to me. It says my name and everything,

but I didn't talk to anybody or, you know, what I mean.

. . . .

[DPA]: Mr. Kaowili, wait, please. You're telling us that you did not tell the detective about riding around with Trent and Jonah on June 18th?

Kaowili: I guess.

[DPA]: And you're telling us that you did not tell the detective about an incident where Alo Sua hit Mr. Gooman with his gun and you gave him some money, is that what you're telling us?

Kaowili: No, I'm not telling you anything cause I never talk to no detective.

When Puahi took the witness stand, he testified in relevant part as follows:

[DPA]: So you don't remember talking to Detective Shimatsu on July 9th in the morning about 8:15 until about 8:25?

Puahi: I forget.

. . . .

[DPA]: Do you remember telling the detective that you were in Corey Kaowili's car and Jonah Gooman was driving?

. . . .

Puahi: I didn't say that to the detective.

. . . .

[DPA]: Did you tell the detective—well, he asked you who were you with at the time the robbery occurred and you answered I was with Corey Kaowili. Do you remember telling him that?

Puahi: No.

[DPA]: Would it help you to look at the transcript to remember?

Puahi: Maybe.

. . . .

[DPA]: All right. When the detective asked you where the incident occurred, do you remember telling him Pupuole?

---

**2.** HRS § 708–840 provides in relevant part:

**Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

. . . .

(b) The person is armed with a dangerous instrument and:

(i) The person uses force against the person of anyone present with intent to overcome

that person's physical resistance or physical power of resistance; or

(ii) The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property.

Puahi: No.

. . . .

[DPA]: And do you deny telling that to the detective too, in other words?

Puahi: Yes.

. . . .

[DPA]: Do you remember telling the detective we were driving around and we seen him, referring to Alo Sua, and he came up to the car and we were talking story with him. Do you remember telling that to the detective?

Puahi: No.

[DPA]: Are you saying that you didn't tell that to the detective?

Puahi: Yes.

. . . .

[DPA]: Now, do you remember continuing with the detective: So, during that time I jump out of the car for use the bathroom. Is that true?

Puahi: No.

. . . .

[DPA]: And you didn't tell that to the detective; is that correct?

Puahi: Yes.

[DPA]: Do you remember continuing with the detective: So I wen [sic] go use the bathroom. By the time I came back to the car, [Sua] was already walking away already. Do you remember telling that to the detective?

Puahi: No.

[DPA]: Are you denying saying that?

Puahi: Yes.

. . . .

[DPA]: Did you tell the detective basically that you jumped out of the car to use the bathroom, you got back, [and Sua] was walking away from the car. You told [Sua] okay, you know, see you later. You got in the car and you asked your cousin what's wrong, referring to [Gooman], and [Gooman] told you oh, buggah hit me with the gun. You remember telling that to the detective?

Puahi: No.

[DPA]: Are you denying that you ever said that?

Puahi: Yes.

Gooman testified in relevant part as follows:

[DPA]: [Y]ou remember going to Grand Jury in this case, don't you?

Gooman: (Witness shaking head).

. . . .

[DPA]: You remember going to the other court building down 777 Punchbowl Street on July 23rd, of this year, you went with your mom Marlene, you remember that?

Gooman: Yeah, I remember that.

. . . .

[DPA]: You remember if you took an oath to tell the truth about what happened?

. . . .

Gooman: Yes.

. . . .

[DPA]: Okay. Do you remember being asked at the Grand Jury: Now, I want to take you back to last June, 1996, a few days or a week before June 18th, did somebody by the name of [Sua] approach you concerning getting some money. Do you remember being asked that question.

Gooman: No.

[DPA]: Would it help to look at the transcript to remember?

Gooman: (Witness shaking head.) I no remember.

[DPA]: Well, if it's down there in black and white, would that help you to recall what happened?

Gooman: I no remember.

. . . .

[DPA]: Are you telling this jury that today, as you sit here today, your memory of these events is not good enough to allow you to testify fully and accurately?

Gooman: Yes.

[DPA]: But you were able to testify fully and accurately at the Grand Jury?

Gooman: (Witness nodded affirmatively.) Yeah.

At this point, the prosecution offered Gooman's grand jury transcript into evidence. Sua objected on the ground that he had not

been afforded an opportunity to cross-examine Gooman regarding the substance of Gooman's grand jury testimony. On December 26, 1997, the circuit court allowed Gooman's grand jury testimony to be read to the jury, pursuant to Hawai'i Rules of Evidence (HRE) Rule 802.1(4) (1993).[3]

Following the reading of his grand jury testimony, Gooman testified further in relevant part as follows:

[DPA]: Were you able to pick anybody out of the photographic lineup as the person that demanded money and hit you with the gun?

Gooman: Um, I picked out the picture.

. . . .

[DPA]: What was the number of the photograph that you picked out?

Gooman: Number 4.

[DPA]: Wh[ose] photograph was that?

Gooman: [Sua].

[DPA]: Do you remember what you wrote on the form at the time you picked out No. 4?

Gooman: No, I don't.

[DPA]: Would it help to refresh your recollection to look at the form again?

Gooman: Yeah.

[DPA]: And I'm referring to the spot down there. Does that help you remember what you wrote on the form?

Gooman: No, it doesn't.

[DPA]: That is your handwriting?

Gooman: Yes.

[DPA]: And that's your signature at the bottom?

Gooman: Yes.

[DPA]: Does it indicate on the form "I have selected the person depicted in Photograph No. 4 as being the suspect in this case?["]

Gooman: Yes.

[DPA]: Does it go on to say in your own handwriting "Alo Sua demanded money from me and hit me with a gun"?

. . . .

Gooman: That's what it says right there.

Gooman proceeded to testify that he had gone to the hospital emergency room on June 18, 1996 and that he remembered a lot of police officers coming to his house on that date. Gooman testified that he was unable to remember anything else about the alleged incident.

The prosecution's final witness, Honolulu Police Department (HPD) Detective Derek Shimatsu, testified as follows regarding telephone conversations in which he had engaged with Puahi and Kaowili:

[DPA]: When you interviewed Trent Puahi over the phone, Detective, did he indicate that he had been riding with Cory Ka[o]wili and Jonah Gooman on June 18, 1996?

Shimatsu: Yes, he did say that. Yes.

[DPA ]: Did he further indicate that at some point while driving around Waipahu they had stopped and picked up Alomalietoa Sua—

Shimatsu: Yes.

[DPA]:—and Sua had entered the car?

Shimatsu: Yes.

---

**3.** HRE Rule 802.1 provides in relevant part:

> **Hearsay exception; prior statements by witnesses.** The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:
> (1) Inconsistent statement. The declarant is subject to cross-examination concerning the declarant's statement, the statement is inconsistent with the declarant's testimony, the statement is offered in compliance with rule 613(b), and the statement was:
> . . .
> (C) Recorded in a substantially verbatim fashion by stenographic, mechanical, electrical, or other means contemporaneously with the making of the statement;
> . . .
> (3) Prior identification. The declarant is subject to cross-examination concerning the subject matter of the declarant's statement, and the statement is one of identification of a person made after perceiving that person; or
> (4) Past recollection recorded. A memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

[DPA]: Did Mr. Puahi indicate that as far as the alleged robbery incident he was—he left the car to go urinate?

Shimatsu: Yes. That's what he told me, yes.

[DPA]: And what did he tell you concerning when he got back from urinating?

Shimatsu: He said he left the vehicle to use the bathroom. As he was returning, Trent Puahi told me that he observed Mr. Sua walking away from the vehicle and he told Mr. Sua, "Okay, Alo," in other words saying goodbye, and that when he entered the vehicle, he observed his cousin Jonah Gooman had an injury. So he asked Jonah, "What happened, Cuz?" And Jonah replied[,] "[Sua] hit me with the gun" and began to explain further what happened.

. . . .

[DPA]: In his statement to you[,] did [Kaowili] talk about whether or not he had seen Alo Sua strike Jonah Gooman and what, if anything, he did about it or to stop it and his reasons therefore?

. . . .

Shimatsu: Uh, yes. He did say that they met up with Mr. Sua and that Mr. Sua did strike Jonah Gooman on the head and that he prevented further injury by stopping Alo Sua by offering money out of his own pocket. And he offered the money, and then Mr. Sua did take the money and leave preventing further injuries.

[DPA]: Did he say—did Corey Ka[o]wili indicate how much money he told you that he gave to Alo Sua to stop hitting Jonah Gooman?

Shimatsu: He said that he gave him fifty dollars.

Sua objected to Shimatsu's testimony on the ground that he had been unable to cross-examine Kaowili and Puahi regarding this subject matter. The trial court admitted Shimatsu's testimony over Sua's objection.

Shimatsu also testified as follows regarding a meeting he had had with Gooman:

[DPA]: [W]as Mr. Gooman able to pick out anybody from the photographic lineup as the person who demanded money from him and hit him with the gun—

Shimatsu: Yes.

[DPA]:—on June 18, 1996?

Shimatsu: Yes, he did.

[DPA]: And who did he identify?

Shimatsu: He identified Photograph No. 4 which was Mr. Alomalietoa Sua.

[DPA]: Did you use a form, police photographic lineup form to assist you in administering the photographic lineup?

Shimatsu: Yes, I did.

[DPA]: And did Mr. Gooman sign the form?

Shimatsu: Yes, he did.

. . . .

[DPA]: Did Mr. Gooman make any comment under the area on the form where he indicated that No. 4 was the person?

Shimatsu: Yes. [H]e wrote down in his own words and in his own handwriting that No. 4 was the person that demanded money from him and struck him with a gun.

Sua did not object to this testimony.

During jury deliberations, the trial court received the following question from the jury: "Is it robbery if one person wants another person to get owed money from another?" Sua requested that the following response be given: "If one person wants another person to get owed money from another, this shows a lack of intent to commit robbery." The trial court instead responded, "Please refer to jury instructions previously given to you."

On December 30, 1997, the jury found Sua guilty as charged. On March 9, 1998, the trial court filed its judgment, guilty conviction, and sentence.

Sua filed a timely notice of appeal on April 7, 1998. In his opening brief, Sua argued: (1) that the trial court admitted various prior statements of Gooman, Kaowili, and Puahi, in violation of the Hawai'i Rules of Evidence; (2) that the trial court committed plain error in not providing the jury with an instruction regarding ignorance or mistake of fact; and (3) that the jury's guilty verdict was not supported by substantial evidence.

On August 30, 1999, the ICA vacated the trial court's judgment, guilty conviction, and

sentence. ICA at 98, 987 P.2d at 996. The ICA's pivotal holding declared

that receipt of a witness's grand jury testimony under the past recollection recorded exception to the rule against hearsay at the criminal trial of [Sua] violated the right of confrontation guaranteed him by the Hawai'i Constitution. We conclude the witness's grand jury testimony was not imbued with such indicia of reliability as would comport with the substance of the protections afforded under that guarantee.

*Id.* at 98, 987 P.2d at 996. The ICA noted that, inasmuch as "the grand jury procedure is primarily intended to facilitate the government's interest in obtaining an indictment[,] . . . a hearsay exception for grand jury testimony cannot be said to substantively preserve [Sua's] right of cross-examination." *Id.* at 89, 987 P.2d at 987.

The ICA also held that Sua's "assertions that the [trial] court erred in denying his motion for judgment of acquittal and that the verdict was not supported by substantial evidence must be rejected." *Id.* at 97, 987 P.2d at 995. The ICA noted that Gooman's testimony regarding the photographic lineup alone "would have enabled a person of reasonable caution to conclude [that Sua] was guilty." *Id.* at 98, 987 P.2d at 996.

On September 23, 1999, the prosecution filed the present timely application for a writ of certiorari.

## II. *STANDARDS OF REVIEW*

### A. *Alleged Violation Of Right To Confrontation*

Whether the prosecution has made an adequate showing of the "unavailability" of a witness—for the purpose of satisfying the confrontation clauses of the United States and Hawai'i Constitutions—is, at the first level of analysis, a question of fact for the trial court to decide, involving a determination of the nature of the prosecution's "good faith" efforts to secure the witness's presence at trial. Findings of fact are reviewed under the clearly erroneous standard. *State v. Ganal,* 81 Hawai'i 358, 368, 917 P.2d 370, 380 (1996); *Tachibana v. State,* 79 Hawai'i 226, 231, 900 P.2d 1293, 1298 (1995); *State v. Furutani,* 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994). A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left "with the definite and firm conviction that a mistake has been committed." *Ganal,* 81 Hawai'i at 368, 917 P.2d at 380; *Tachibana,* 79 Hawai'i at 231, 900 P.2d at 1298; *Furutani,* 76 Hawai'i at 179, 873 P.2d at 58.

At the second level of analysis, we ask whether the facts as found amount to a legally adequate good faith effort to confront the defendant with his accusers. This is a question of federal and/or state constitutional law, and we answer it by exercising our own " 'independent constitutional judgment [based] on the facts of the case.' " *Crosby v. State Dep't of Budget & Fin.,* 76 Hawai'i 332, 341, 876 P.2d 1300, 1309 (1994) (quoting *Connick v. Myers,* 461 U.S. 138, 150 n. 10, 103 S.Ct. 1684, 1692 n. 10, 75 L.Ed.2d 708 (1983)), *cert. denied* 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 635 (1995).

*State v. Lee,* 83 Hawai'i 267, 273, 925 P.2d 1091, 1097 (1996).

Whether the prosecution has made a showing that a statement bears "adequate indicia of reliability"—for the purposes of satisfying the confrontation clauses of the United States and Hawai'i Constitutions—is, under one of two available modes of analysis, a question of law, involving a determination whether the statement falls within a "firmly rooted hearsay exception." *See Lee,* 83 Hawai'i at 275, 925 P.2d at 1099 (citing *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). We review a question of law under the right/wrong standard. *State v. Baranco,* 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994) (citing *In re Estate of Holt,* 75 Haw. 224, 857 P.2d 1355 (1993)).

Pursuing the second mode of analysis, we ask whether the prosecution has made a "showing of particularized guarantees of trustworthiness." *See Lee,* 83 Hawai'i at 275, 925 P.2d at 1099 (citing *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531). The evaluation of a statement's trustworthiness is reviewed under an abuse of discretion standard. *See State v. Christian,* 88 Hawai'i 407, 418, 967

P.2d 239, 250 (1998) (applying abuse of discretion standard to assessment of whether "corroborating circumstances" rose to level of clearly indicating a statement's trustworthiness); *State v. Swier*, 66 Haw. 448, 450, 666 P.2d 169, 170 (1983) (applying abuse of discretion standard to trial court's evaluation of trustworthiness of witness' statement); *State v. Osborne*, 982 P.2d 1045, 1049 (Mont. 1999) (noting that admissibility of evidence examined for "particularized guarantees of trustworthiness" falls within the discretion of trial judge).

B. *Sufficiency Of The Evidence*

"[V]erdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the [trier of fact's] findings." *Tsugawa v. Reinartz*, 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974). We have defined "substantial evidence" as "credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion." *See, e.g., In re Doe, Born on January 5, 1976*, 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (citations omitted) (brackets in original).

*Aga v. Hundahl*, 78 Hawai'i 230, 237, 891 P.2d 1022, 1029 (1995). "[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the [trier of fact]." *State v. Buch*, 83 Hawai'i 308, 321, 926 P.2d 599, 612 (1996) (citation omitted). "We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction." *State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992), *reconsideration denied*, 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted).

*State v. Staley*, 91 Hawai'i 275, 281–82, 982 P.2d 904, 910–11 (1999) (quoting *State v. Mattiello*, 90 Hawai'i 255, 259, 978 P.2d 693, 697 (1999) (quoting *State v. Stocker*, 90 Hawai'i 85, 90, 976 P.2d 399, 404 (1999) (quoting *State v. Lee*, 90 Hawai'i 130, 134, 976 P.2d

444, 448, *reconsideration denied* (1999) (quoting *State v. Bautista*, 86 Hawai'i 207, 210, 948 P.2d 1048, 1051 (1997))))) (brackets in original).

C. *Plain Error*

"We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). See also Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*Staley*, at 282, 982 P.2d at 911 (quoting *State v. Maumalanga*, 90 Hawai'i 58, 63, 976 P.2d 372, 377 (1998), *reconsideration denied* (1999) (quoting *State v. Davia*, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998))).

D. *Jury Instructions*

" 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading,' " *State v. Kinnane*, 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)).... *See also State v. Hoey*, 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.' " *State v. Pinero*, 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) ... (quoting *Turner v. Willis*, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

*State v. Heard*, 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. *See Yates v. Evatt*, 500 U.S. 391, 402–03 [111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432] ... (1991)[.]

*[State v.] Arceo*, 84 Hawai'i [1,] 11–12, 928 P.2d [843,] 853–54 [ (1996) ] (quoting *State v. Holbron*, 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied*, 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original) (emphasis deleted)); *see also State v. Loa*, 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996); *State v. Robinson*, 82 Hawai'i 304, 310–11, 922 P.2d 358, 364–65 (1996).

*State v. Cabrera*, 90 Hawai'i 359, 364–65, 978 P.2d 797, 802–03 (1999) (quoting *Maumalanga*, 90 Hawai'i at 62–63, 976 P.2d at 376–77 (quoting *State v. Cullen*, 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997))) (brackets and ellipsis points in original).

### III. *DISCUSSION*

A. *The Admission Of Gooman's Grand Jury Testimony As "Past Recollection Recorded" Did Not Violate Sua's Constitutional Right Of Confrontation.*

The prosecution argues that "there was no violation of [Sua's] confrontation rights as Gooman's grand jury testimony was properly admitted into evidence after the [prosecution] had established the requisite foundation for the past recollection recorded hearsay exception." While we disagree with the bright line rule implied by the prosecution's argument, we agree with the prosecution's conclusion that Sua's constitutional right of confrontation was not violated.

The sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution (1978)[4] guarantee an accused the right to confront adverse witnesses. "The right of confrontation affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses." *State v. Ortiz*, 74 Haw. 343, 360, 845 P.2d 547, 555 (1993) (citing *State v. Rodrigues*, 7 Haw.App. 80, 84, 742 P.2d 986, 989 (1987)). "Thus, chief among the interests secured by the confrontation clause is the right to cross-examine one's accuser." *State v. McGriff*, 76 Hawai'i 148, 155, 871 P.2d 782, 789 (1994) (citing *Roberts*, 448 U.S. at 63, 100 S.Ct. 2531). There is no right, however, to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens*, 484 U.S. 554, 559, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (citations and internal quotation signals omitted)).

We have noted that "[t]he inherent unreliability of hearsay statements raises special problems within the context of a criminal case[,] since the out-of-court declaration also involves a defendant's constitutional right to cross-examine and confront the witnesses against him." *State v. Hoffman*, 73 Haw. 41, 47, 828 P.2d 805, 809 (1992) (quoting *Blue v. State*, 558 P.2d 636, 644 (Alaska 1977)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE 801(3) (1985). Generally, because hearsay is not subject to the same safeguards as are present during in-court testimony before a factfinder, "[h]earsay is inadmissible at trial, unless it qualifies as an exception to the rule against hearsay." *Ortiz*, 74 Haw. at 357, 845 P.2d at 554 (citations and internal brackets omitted); *see also* HRE 802 (hearsay is not admissible at trial, unless falling under an exception provided in the HRE, in rules prescribed by the Hawai'i Supreme Court, or by statute). We have recognized that the hearsay rule and the confrontation clause are "generally designed to avoid similar evils; however, it is not correct to surmise

---

4. Article I, section 14 of the Hawai'i Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against the accused[.]" The sixth amendment to the United States Constitution is virtually identical.

that the overlap of the two doctrines of law is so complete that the confrontation clause is nothing more than a codification of the hearsay rules of evidence." *State v. Faafiti*, 54 Haw. 637, 639, 513 P.2d 697, 700 (1973).

Commentators have recognized that the confrontation clause encompasses a greater right than an evidentiary rule of exclusion or inclusion and that satisfaction of one does not necessarily result in compliance with the other.

*State v. Apilando*, 79 Hawai'i 128, 131–32, 900 P.2d 135, 138–39 (1995) (brackets in original). We have noted that, "[w]hile a literal interpretation of the confrontation clause could bar the use of any out-of-court statements when the declarant is unavailable, this Court has rejected that view as 'unintended and too extreme.'" *State v. Moore*, 82 Hawai'i 202, 223, 921 P.2d 122, 143 (1996) (quoting *McGriff*, 76 Hawai'i at 156, 871 P.2d at 790 (citation omitted)). Accordingly, while we have repeatedly recognized the importance of the right of confrontation, we have nonetheless held that a declarant's hearsay may be admitted at trial even though the declarant is unavailable for cross-examination. *See, e.g., Moore*, 82 Hawai'i at 225, 921 P.2d at 145 (holding that admission of former testimony given at a supervised release hearing did not violate defendant's right of confrontation).

This court has repeatedly followed the test established in *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531, recognizing that

> the confrontation clause restricts the range of admissible hearsay in two ways. First, the prosecution must either produce, or demonstrate the unavailability of, a declarant whose statement it wishes to use against a defendant. Second, upon a showing that the witness is unavailable, only statements that bear adequate indicia of reliability are admissible.

*Ortiz*, 74 Haw. at 361, 845 P.2d at 555–56 (citing *Roberts*, 448 U.S. at 65 [100 S.Ct. 2531] ...); *see also McGriff*, 76 Hawai'i at 156, 871 P.2d at 790; *Apilando*, 79 Hawai'i at 131, 900 P.2d at 139–40.

*Moore*, 82 Hawai'i at 223, 921 P.2d at 143.

As regards the first part of the *Roberts* test, we have "remained resolute that[,] under the confrontation clause of the Hawai'i Constitution, a showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants." *Lee*, 83 Hawai'i at 276, 925 P.2d at 1100 (quoting *Apilando*, 79 Hawai'i at 133, 900 P.2d at 140 (quoting *McGriff*, 76 Hawai'i at 156, 871 P.2d at 790)) (brackets in original). "Unavailability may be demonstrated by a showing of ... *loss of memory* [.]" *Apilando*, 79 Hawai'i at 137, 900 P.2d at 144 (citing *Tsuruda v. Farm*, 18 Haw. 434, 438 (1907)) (emphasis in original).

Upon demonstrating that a witness is unavailable, under the second half of the *Roberts* test, only statements that bear "adequate indicia of reliability" may be admitted into evidence. "Reliability" may be shown in two ways. First, reliability may be inferred without more if it "falls within a firmly rooted hearsay exception[.]" *Ortiz*, 74 Haw. at 361, 845 P.2d at 556 (quoting *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531). The hearsay exception for past recorded recollections "is clearly a firmly rooted hearsay exception." *Hatch v. State*, 58 F.3d 1447, 1467 (10th Cir.1995); *see also In re Subpoena of Drake*, 786 F.Supp. 229, 234 (E.D.N.Y.1992) (noting that exception for past recollection recorded is "one of the 'firmly rooted' hearsay exceptions"); *accord United States v. Picciandra*, 788 F.2d 39, 42–43 (1st Cir.1986) (noting that courts accept hearsay exception for recorded recollection despite confrontation clause challenges). Application of the exception for past recollection recorded, therefore, "does not involve any deprivation of the right of confrontation as the Sixth Amendment has been interpreted and construed." *United States v. Kelly*, 349 F.2d 720, 770 (2d Cir. 1965).

Alternatively, reliability may be demonstrated "upon a showing of particularized guarantees of trustworthiness." *Ortiz*, 74 Haw. at 361, 845 P.2d at 556 (quoting *Rob-*

*erts*, 448 U.S. at 66, 100 S.Ct. 2531). The United States Supreme Court has declined "to endorse a mechanical test for determining 'particularized guarantees of trustworthiness' under the [Confrontation] Clause." *Idaho v. Wright*, 497 U.S. 805, 822, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Instead, the Court has determined that " 'particularized guarantees of trustworthiness' must be shown from the totality of the circumstances" and that "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 819, 110 S.Ct. 3139. We note that other jurisdictions have developed loose guidelines for determining whether grand jury testimony is supported by guarantees of trustworthiness, including, *inter alia:* whether the testimony was given under oath, *see United States v. Earles*, 113 F.3d 796, 801 (8th Cir.1997), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998); whether the declarant recanted his or her inculpatory declaration or expressed belated views as to its accuracy, *see id.;* the relationship between the declarant and the defendant, *see id.;* whether the declarant testified before the grand jury voluntarily, *see United States v. McHan*, 101 F.3d 1027, 1038 (4th Cir. 1996), *cert. denied*, 520 U.S. 1281, 117 S.Ct. 2468, 138 L.Ed.2d 223 (1997); whether the declarant testified from person knowledge, *see id.;* and the relationship of the declarant to the government, *see id. Cf. Geraci v. Senkowski*, 23 F.Supp.2d 246, 263 (E.D.N.Y.1998) (concluding that a witness' grand jury testimony exhibited particularized guarantees of trustworthiness where the witness gave testimony under oath, had personal knowledge of the facts, was a witness to the incident, and had a long-term acquaintance with both the victim and the defendant); *State v. Lincoln*, 71 Haw. 274, 279–80, 789 P.2d 497, 500 (1990) (citing *United States v. Barlow*, 693 F.2d 954, 962 (6th Cir.1982), for the following test for determining whether grand jury testimony possesses "circumstantial guarantees of trustworthiness": "the trial court should consider the declarant's relationship with both the defendant and the government, the declarant's motivation to testify before the grand jury, the extent to which the testimony reflects the declarant's personal knowledge, whether the declarant has ever recanted the testimony, and the existence of corroborating evidence available for cross-examination" [5] (emphases omitted)).

■ In the instant matter, the ICA noted, and the prosecution does not contest in its application, that Gooman's grand jury testimony constituted hearsay, pursuant to HRE Rule 801 (1993).[6] ICA at 84, 987 P.2d at 982. The ICA also properly observed that Gooman's grand jury transcript satisfied the foundational requirements of HRE Rule 802.1(4),[7] *see supra* note 3, and thereby qualified as an exception to the hearsay rule. ICA at 84, 987 P.2d at 982.

5. We note that, since this court's decision in *Lincoln*, the United States Supreme Court has held that corroborating evidence may *not* be used to support a hearsay statement's "particularized guarantees of trustworthiness." *Wright*, 497 U.S. at 822–24, 110 S.Ct. 3139. In *Wright*, the Court noted that the use of corroborating evidence for such a purpose "would permit the admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think at odds with the requirement that hearsay evidence admitted under the Confrontation Clause be so trustworthy that cross-examination of the declarant would be of marginal utility." 497 U.S. at 823, 110 S.Ct. 3139.

6. As we have indicated above, HRE 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE 801 defines "statement" in relevant part as "an oral or written assertion."

7. Other jurisdictions have held that grand jury testimony may be admitted as "past recollection recorded." *See, e.g., United States v. Patterson*, 678 F.2d 774, 778 (9th Cir.1982) (noting that "admission into evidence of portions of grand jury testimony as past recollection is proper use of such testimony"); *United States v. Barrow*, 363 F.2d 62, 67 (3d Cir.1965) (observing that, where grand jury testimony fails to refresh the memory of a witness, it is received as evidence of past recollection recorded); *but see Commonwealth v. Fryar*, 414 Mass. 732, 610 N.E.2d 903, 912 (1993) (ruling that grand jury testimony not admissible as past recollection recorded where witness did not adopt the grand jury testimony as being accurate at or about the time of the events).

■ The first prong of the *Roberts* test was satisfied in the present case. Although he was present at trial, Gooman was unable to recollect any substantive elements of his grand jury testimony and, therefore, was "unavailable" by virtue of his loss of memory. *See Apilando,* 79 Hawai'i at 137, 900 P.2d at 144.

■ The second prong of the *Roberts* analysis, once unavailability has been demonstrated, focuses upon the reliability of the witness' statement. Inasmuch as Gooman's grand jury testimony falls within a "firmly rooted hearsay exception," as "past recollection recorded," and therefore bears an adequate indicia of reliability, *see Ortiz,* 74 Haw. at 361, 845 P.2d at 556, the testimony should satisfy the confrontation clause. Accordingly, the traditional inquiry as to whether the testimony bears "particularized guarantees of trustworthiness" need not necessarily be undertaken. *See, e.g., McGriff,* 76 Hawai'i at 156–58, 871 P.2d at 790–92 (holding that a hearsay statement did not violate the confrontation clause because it fell within the "firmly rooted" co-conspirator exception to the hearsay rule); *State v. Jenkins,* 168 Wis.2d 175, 483 N.W.2d 262, 272 (Ct.App. 1992) (holding that, where a defendant's out-of-court declaration satisfied the requirements of the past recollection recorded exception to the hearsay rule, the confrontation clause was not violated because the hearsay exception was firmly rooted).

We have held, however, "that the mechanistic application of the hearsay exceptions is inappropriate." *Lincoln,* 71 Haw. at 280, 789 P.2d at 500 (citing *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). Accordingly, to ensure the highest standard of protection of Sua's constitutional right of confrontation,[8] we analyze whether Gooman's grand jury testimony bore "particularized guarantees of trustworthiness." In so doing, we depart from the analysis set forth in the ICA's opinion, in which, *inter*

alia, the ICA held that, inasmuch as "the grand jury procedure is primarily intended to facilitate the government's interest in obtaining an indictment," a hearsay exception for grand jury testimony cannot preserve a defendant's right to confrontation. ICA at 89, 987 P.2d at 987. We regard the ICA's holding as overstating the proposition.

We agree that "grand jury proceedings differ markedly from the typical preliminary hearing or trial," particularly inasmuch as grand jury proceedings are *ex parte* investigations, in the course of which (1) the prosecution may elicit hearsay and adduce scripted testimony and (2) the defense attorney may not appear or engage in cross-examination of the prosecution's witnesses. ICA at 88–89, 987 P.2d at 986–987; *see also State v. Chong,* 86 Hawai'i 282, 289–90, 949 P.2d 122, 129–30 (1997). We do not believe, however, that the character of the grand jury is such that all testimony presented therein is necessarily suspect.

■ This court has long recognized the important role that the grand jury plays in our criminal justice system: "[t]he grand jury functions as a barrier to reckless or unfounded charges and serves as a 'shield against arbitrary or oppressive action, by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance.'" *State v. Kahlbaun,* 64 Haw. 197, 203, 638 P.2d 309, 315 (1981) (quoting *United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976)). We agree with the observation made by the United States Court of Appeals for the Fourth Circuit:

> Grand jury testimony is given in the solemn setting of the grand jury, under oath and the danger of perjury, and in the presence of jurors who are free to question

8. Although *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531, suggests that the existence of a "firmly rooted hearsay exception" alone is sufficient to satisfy the "adequate indicia of reliability" test, this court will not hesitate to extend the protections of the Hawai'i Constitution beyond federal standards. *See, e.g., State v. Richie,* 88 Hawai'i

19, 42, 960 P.2d 1227, 1250 (1998); *Quitog,* 85 Hawai'i at 130 n. 3, 938 P.2d at 561 n. 3 (1997); *Arceo,* 84 Hawai'i at 28, 928 P.2d at 870; *State v. Lessary,* 75 Haw. 446, 453–54, 865 P.2d 150, 154 (1994); *State v. Aplaca,* 74 Haw. 54, 67 n. 2, 837 P.2d 1298, 1305 n. 2 (1992).

witnesses and assess their credibility and a court reporter who prepares an official transcript of the testimony. The nature of grand jury testimony thus provides some indicia of trustworthiness. *See United States v. Murphy*, 696 F.2d 282, 286 (4th Cir.1982), *cert. denied*, 461 U.S. 945 [103 S.Ct. 2123, 2124, 77 L.Ed.2d 1303] (1983); *United States v. Garner*, 574 F.2d 1141, 1144 (4th Cir.), *cert. denied sub nom. McKethan v. United States*, 439 U.S. 936 [99 S.Ct. 333, 58 L.Ed.2d 333] (1978); *United States v. West*, 574 F.2d 1131, 1136 (4th Cir.1978). Nonetheless, it should not be concluded that simply because the hearsay is grand jury testimony it automatically satisfies the second prong of the *Roberts* test. *See United States v. Clarke*, 2 F.3d 81, 83–84 (4th Cir.1993), *cert. denied*, 510 U.S. 1166 [114 S.Ct. 1194, 127 L.Ed.2d 544] (1994); *Garner*, 574 F.2d at 1144. Rather, we must "examine the 'totality of the circumstances that surround the making of [a proffered hearsay] statement' for 'particularized guarantees of trustworthiness.'" *Clarke*, 2 F.3d at 84 (quoting *Wright*, 497 U.S. at 822 [110 S.Ct. 3139] ... )[.]

*McHan*, 101 F.3d at 1038 (some brackets added and some in original). Accordingly, we review Gooman's grand jury testimony to ascertain whether it bears "particularized guarantees of trustworthiness."

■ While there is no "mechanical test" for determining whether a statement possesses "particularized guarantees of trustworthiness," *see Wright*, 497 U.S. at 822, 110 S.Ct. 3139, we believe, in this case, that Gooman's grand jury testimony was supported by numerous guarantees, which, taken together, satisfy the second prong of the *Roberts* test. First, we note that Gooman's grand jury testimony was given under oath. Second, as the victim, Gooman had direct personal knowledge of the relevant facts. Third, Gooman exhibited no reluctance in the grand jury proceeding to implicate Sua. Fourth, Gooman bore no relationship to the government that would have benefitted him to testify against Sua. Finally, Gooman never recanted his inculpatory testimony or expressed belated views regarding its accuracy; in fact, at Sua's trial, Gooman testified that he was able to testify at the grand jury "fully and accurately." Given these indicia of trustworthiness, we cannot say that the trial court abused its discretion in admitting Gooman's grand jury testimony into evidence.

■ The circumstances of *Carey v. United States*, 647 A.2d 56 (D.C.1994), are analogous to those of the instant matter.[9] In *Carey*, a witness testified before the grand jury that she had made a statement to the police on the night of a murder. *Id.* at 57. The witness' statement to the police was then read to the grand jury, and the witness affirmed that it was true. *Id.* at 57. At the defendant's trial, however, the witness testified that she was unable to remember either what had happened on the night of the murder or whether she had given a statement to the police or had testified before the grand jury. *Id.* at 57–58. The trial court permitted the prosecution to read to the jury, as past recollection recorded, that portion of the witness' grand jury testimony which had incorporated her statement to the police. *Id.* at 58. Reviewing the defendant's argument that his right of confrontation right was vio-

9. In our view, the ICA's reliance on *State v. Woods*, 48 Ohio App.3d 1, 548 N.E.2d 954 (1988), is misplaced. In *Woods*, the prosecution sought to introduce the out-of-court statement of a witness who "declined to respond to questions posed with respect to his grand jury testimony on direct examination and declared that he would not answer questions on cross-examination." *Id.* at 959. In fact, on cross-examination, the witness "refused to verify the truth of his grand jury testimony or to respond to questions regarding the substance of the testimony, and ultimately declined to respond further." *Id.* at 958. On appeal, the *Woods* court held that the admission of the witness' grand jury testimony violated the defendant's right to confrontation.

The scenario presented in *Woods*—in which the defendant refused to answer *any* questions regarding his grand jury testimony—is inapposite to the present case. First, the hearsay statements of the witness in *Woods* did not qualify as past recollection recorded and did not fall into any other "firmly rooted hearsay exception." Second, inasmuch as the witness in *Woods* refused to confirm the truth of his grand jury testimony, or even to admit that he testified before the grand jury at all, his grand jury testimony lacked the "particularized guarantees of truthfulness" that are present in the instant matter and that we have enumerated above.

lated by the admission of the witness' police statement through her grand jury testimony, the District of Columbia Court of Appeals observed:

> [The witness] was available for cross-examination by [the defendant's] trial counsel. Indeed, he did cross-examine her at trial about her failure to remember the events on the night of the murder. "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." [*Owens*, 484 U.S.] at 560[ 108 S.Ct. 838.] Though [the defendant's] trial counsel may not have been able to cross-examine [the witness] as he would have liked, our review of the record reveals nothing giving rise the a deprivation of appellant's constitutional right to confrontation.

*Id.* at 59; *cf. People v. Chavies*, 234 Mich. App. 274, 593 N.W.2d 655, 659 (1999) (concluding that, although witnesses claimed to remember nothing at trial, inasmuch as their grand jury testimony constituted prior inconsistent statement, the grand jury testimony did not violate the defendant's right of confrontation). Similarly, in the present matter, Gooman made assertions before the grand jury and later claimed a loss of memory at trial. Sua was provided with the opportunity to cross-examine Gooman regarding his loss of memory. Inasmuch as Gooman's grand jury testimony met both requirements of the *Roberts* test, and Sua was able to cross-examine Gooman regarding his failure to remember the alleged incident, we cannot say that the admission of Gooman's grand jury testimony violated Sua's right to confrontation.

B. *The Admission Of Testimony Regarding Gooman's Prior Identification Of Sua And Handwritten Statement Regarding The Identification Form Did Not Violate Sua's Right Of Confrontation.*

We agree with the ICA's determination that evidence regarding Gooman's prior identification of Sua was properly admitted into evidence. ICA at 93, 987 P.2d at 991. We likewise agree with the ICA's conclusion that Gooman's handwritten statement on the bottom of the identification form, which read "Alo Sua demanded money from me and hit me with a gun," did not meet the foundational requirements of HRE Rule 802.1(3), *see supra* note 3. *See* ICA at 93, 987 P.2d at 991. Nonetheless, we hold that the Gooman's right of confrontation was not violated by the admission of testimony regarding Gooman's handwritten statement on the identification form.

■ Gooman's statement on the identification form satisfies the requirements of HRE Rule 802.1(4), *see supra* note 3, *i.e.*, the hearsay exception for past recollection recorded. Gooman wrote the statement himself, indicating that he "once had knowledge" of the information contained therein. Gooman signed the statement, thereby adopting it as his own. Inasmuch as the statement was made less than a month after the incident, we may fairly infer that it was given when the events were still "fresh in his memory." Finally, Gooman testified at trial that he was unable to remember writing the statement. Under these circumstances, the foundational requirements of HRE Rule 802.1(4) were met.

■ As above, we apply the *Roberts* test to determine whether the admission of Gooman's statement on the identification form violated Sua's constitutional right of confrontation. We note that Gooman's loss of memory rendered him "unavailable" for purposes of the first prong of the *Roberts* test. *See Apilando*, 79 Hawai'i at 137, 900 P.2d at 144. We further note that the statement bears an adequate indicia of reliability, inasmuch as it "falls within a firmly rooted hearsay exception[.]" *Ortiz*, 74 Haw. at 361, 845 P.2d at 556.

■ Again, to ensure the highest standard of protection of Sua's rights under the confrontation clause, we engage in an analysis of whether Gooman's statement on the identification form exhibits "particularized guarantees of trustworthiness." *See Lee*, 83 Hawai'i at 275, 925 P.2d at 1099 (citing *Roberts*, 448 U.S. at 66, 100 S.Ct. 2531). We believe that the statement is supported by

sufficient guarantees to satisfy the second prong of the *Roberts* test. First, Gooman signed the identification form, thereby adopting the statements contained therein as his own. Second, he possessed had direct personal knowledge of the relevant facts. Third, he drafted the inculpatory statement in his own words and handwriting. Fourth, he stood in no relationship to the government that would have benefitted him falsely to implicate Sua. Finally, he never recanted his inculpatory statement or expressed belated views regarding its accuracy. Given these indicia of trustworthiness, we cannot say that the trial court abused its discretion in determining that Gooman's statement was imbued with particularized guarantees of trustworthiness. Accordingly, we hold that Sua's right of confrontation was not violated by the admission of testimony regarding Gooman's statement on the identification form.

C. *The Admission Of Kaowili's and Puahi's Allegedly Prior Inconsistent Statements Did Not Violate Sua's Right Of Confrontation.*

█ Sua argues that he was denied his right to effective cross-examination because allegedly prior inconsistent statements of Kaowili and Puahi were introduced into evidence via the testimony of Detective Shimatsu. We disagree.

HRE Rule 802.1(1)(C), *see supra* note 3, delineates the prerequisites for admitting the prior inconsistent statements of witnesses into evidence. Kaowili testified at trial (1) that he never spoke with a police detective regarding the alleged incident, (2) that he never told a detective that he was riding in a car with Puahi, Gooman, and Sua on the night of the alleged incident, and (3) that he never told a police detective that he gave Sua money after Sua hit Gooman with a gun. Puahi testified at trial that he could not remember whether he had spoken with a police detective, but that he never told a police detective (1) that he was traveling in Waipahu with Kaowili on the night of the alleged incident, (2) that they met up with Sua, and (3) that, when he returned from going to the bathroom, Gooman had been hit on the head by Sua. We agree with the ICA's

determination that these statements by Kaowili and Puahi were inconsistent with their prior statements to Shimatsu. *See* ICA at 96, 987 P.2d at 994.

The ICA noted, however, that

the [prosecution] failed to submit evidence that the prior inconsistent statements were "[r]ecorded in substantially verbatim fashion ... contemporaneously with the making of the statement." During trial, the prosecutor referred to transcripts of Kaowili's and P[ ]uahi's statements several times and apparently was allowed to read from them. The prosecutor also represented to the court that the statements were recorded and that Shimatsu would testify to that fact. The prosecutor, however, neglected to adduce such testimony from Shimatsu.

*Id.* at 96–97, 987 P.2d at 994–95 (ellipsis points in original) (some brackets added and some in original). As the ICA recognized, however, Sua did not raise any objection, based on foundational grounds, to Shimatsu's testimony regarding Kaowili's and Puahi's recorded statements. Moreover, Sua's counsel himself conceded the existence of a "telephone recorded statement" given by Kaowili and a "transcribed statement" taken of Puahi.

█ It appears that Sua has waived the issue of whether Kaowili's and Puahi's prior inconsistent statements were properly recorded, pursuant to the requirement of HRE Rule 802.1(1)(C), thereby rendering them admissible at trial. "[T]he rule is well settled that evidence[,] even though incompetent, if admitted without objection or motion to strike, is to be given the same probative force as that to which it would be entitled if it were competent." *State v. Wallace*, 80 Hawai'i 382, 410, 910 P.2d 695, 723 (1996) (citation and internal quotation signals omitted). Inasmuch as Sua failed to object at trial to the admission of Kaowili's and Puahi's prior inconsistent statements on the ground that they were not recorded in a substantially verbatim fashion — and inasmuch as Sua's counsel appeared to concede the fact that the statements had been recorded — we hold

that the statements were properly admitted pursuant to HRE Rule 802.1(1)(C).

We therefore proceed to Sua's claim that his right of confrontation was violated by the admission of Kaowili's and Puahi's prior inconsistent statements. Regarding HRE Rule 802.1, this court has stated:

> The trustworthiness of statements defined in paragraph[ ] ... (C) is further assured by the requirement that the witness-declarant be "subject to cross-examination concerning the subject matter of the statement." The situation envisioned is one where the witness has testified about an event and his [or her] prior written statement also describes that event but is inconsistent with his [or her] testimony. Since the witness can be cross-examined about the event and the statement, the trier of fact is free to credit his [or her] present testimony or his [or her] prior statement in determining where the truth lies. Because the witness is subject to cross-examination, the substantive use of his [or her] prior inconsistent statements does not infringe the sixth amendment confrontation rights of accused in criminal cases, see *California v. Green*, 399 U.S. 149 [90 S.Ct. 1930, 26 L.Ed.2d 489] (1970).

*State v. Clark*, 83 Hawai'i 289, 294, 926 P.2d 194, 199 (1996) (quoting *State v. Eastman*, 81 Hawai'i 131, 136, 913 P.2d 57, 62 (1996) (citing commentary to HRE Rule 802.1)) (brackets and ellipsis points in original). Both Kaowili and Puahi were cross-examined with respect to their prior inconsistent statements to Shimatsu. It therefore follows that the substantive use of these statements did not infringe upon Sua's right of confrontation.

Sua relies on *State v. Canady*, 80 Hawai'i 469, 911 P.2d 104 (App.1996), for the assertion that "a witness that is unable to recall the events allegedly described in the prior statement does not satisfy the requirements of HRE Rule 802.1[,] and therefore the prior statement would not be admissible." In *Canady*, the complaining witness "testified that she could not recall the events that she allegedly described in the statement." 80 Hawai'i at 481, 911 P.2d at 116. In the present matter, Kaowili and Puahi denied ever having made the relevant statements to the de-

tective. Therefore, unlike the witness in *Canady*, who was rendered "unavailable" by virtue of her memory loss, Kaowili and Puahi were both "available" for cross-examination. Accordingly, while we agree with Sua's reading of *Canady*, it is inapposite to the present matter.

D. *The Circuit Court Did Not Commit Plain Error In Not Instructing The Jury Regarding The Defense Of Ignorance Or Mistake Of Fact.*

Sua urges that the trial court committed plain error in not instructing the jury regarding the defense of ignorance or mistake of fact. Specifically, Sua contends that he "believed that he was entitled to a sum of money from the complaining witnesses or the complaining witnesses['] help in obtaining the sum of money." The proposed defense appears to be, therefore, that Sua did not intend to compel Gooman's acquiescence to the taking of money, but simply intended to elicit help from Gooman in collecting deposit money from Gooman's mother. The ICA declined to address this contention. ICA at 97, 987 P.2d at 995.

Inasmuch as the record contained no evidence supporting Sua's proposed defense, we hold that the trial court did not commit plain error in failing to instruct the jury regarding the defense of ignorance or mistake of fact.

> " 'Our cases have firmly established that "a defendant is entitled to an instruction on every defense or theory of defense having any support in the evidence, provided such evidence would support the consideration of that issue by the jury, no matter how weak, inconclusive, or unsatisfactory the evidence may be." ' " *State v. Sawyer*, 88 Hawai'i 325, 333, 966 P.2d 637, 645 (1998) (quoting *State v. Kaiama*, 81 Hawai'i 15, 24, 911 P.2d 735, 744 (1996) (quoting [*State v.*] *Maelega*, 80 Hawai'i 172,] 178–79, 907 P.2d [758,] 764–65 [ (1995) ] (citation omitted))); *see also State v. Russo*, 69 Haw. 72, 76, 734 P.2d 156, 158 (1987) (citation omitted). "However, this court has also noted that 'where evidentiary support for [an] asserted defense, or for any of its essential components, is clearly lacking, it would not be error for the trial court

to refuse to charge on the issue or to instruct the jury not to consider it.'" *Sawyer*, 88 Hawai'i at 333, 966 P.2d at 645 (quoting *State v. Moore*, 82 Hawai'i 202, 210, 921 P.2d 122, 130 (1996) (citation omitted)) (brackets in original); *see also Russo*, 69 Haw. at 76, 734 P.2d at 158; *State v. Warner*, 58 Haw. 492, 498–99, 573 P.2d 959, 963 (1977).

*State v. Cabrera*, 90 Hawai'i 359, 370, 978 P.2d 797, 808 (1999) (some brackets added and some in original).

■ Sua fails to point to any evidence in the record regarding facts about which Sua might have been mistaken or ignorant.[10] There is no evidence suggesting that Sua merely intended to elicit Gooman's assistance in obtaining money from a third party. Indeed, the evidence adduced at trial reflects that Sua *demanded money of Gooman*, compelling the inference that Sua intended to obtain control over the property of another. Sua's suggestion that he believed himself to be the rightful owner of Gooman's money did not entitle him to a jury instruction regarding such a belief, inasmuch as the "claim of right" defense does not apply in a prosecution for robbery. *See State v. McMillen*, 83 Hawai'i 264, 266–67, 925 P.2d 1088, 1090–91 (1996) (noting that "[t]he proposition that a claim of right negates the felonious intent in robbery 'not only is lacking in sound reason and logic, but it is utterly incompatible with and has no place in an ordered and orderly society such as ours, which eschews self-help through violence'" (quoting *People v. Hodges*, 113 A.D.2d 514, 496 N.Y.S.2d 771, 773–74 (1985) (citation omitted))). Accordingly, we hold that Sua was not entitled to a jury instruction regarding the defense of ignorance or mistake of fact.

E. *There Was Substantial Evidence Supporting The Jury's Guilty Verdict.*

The ICA held, and the prosecution understandably does not contest in its application, that there was substantial evidence supporting the jury's verdict. ICA at 98, 987 P.2d at 996. In this regard, inasmuch as the ICA's

holding is uncontested, we leave it undisturbed.

## IV. CONCLUSION

Based on the foregoing reasoning, we reverse the ICA's opinion and affirm the trial court's judgment, guilty conviction, and sentence, filed on March 9, 1998.

---

10. We note that Sua does not claim mistake of law and that, in any case, a "mistaken belief by the defendant that the defendant's conduct is not legally prohibited by the penal law ... must, in most instances, be held ... [to] afford no excuse[.]" Commentary to HRS § 702–220 (1993).